PER CURIAM.
TMs is a workmen’s compensation case.[1]
*1309 The employee, Billy C. Bolding, injured his left knee on the job at the Reeves Rubber Division of Fluorocarbon Company in May 1989, and then reinjured the knee in September 1989.
Dr. Gilbert Aust operated on the left knee in June 1989, and Bolding then returned to work in the shipping department, instead of in his previous position as a master electrician. After the reinjury in September 1989, Dr. Jack Reagan treated Bolding, then released him to return to work with no restrictions in October 1989. Dr. Reagan did not assign any impairment rating based on the September 1989 left knee injury. Approximately four months after the reinjury to his left knee, Bolden injured his right knee. He has had continuing problems with that knee that contribute to his overall disability. Bolding quit working at Fluorocarbon in December 1990 and has not worked full-time since. When he quit, he was working in the finishing department.
Dr. Joseph Sherrill operated on Bolding’s left knee in April 1993. Dr. Sherrill determined that Bolding reached maximum medical improvement on September 24,1993. He then assigned Bolding a 26% impairment to the lower leg and an 11% impairment to the body as a whole, based on the injury to the left knee. Dr. Sherrill indicated that Bolding would have some limitations in long-term standing and walking and would have problems squatting, using stairs and ladders, and carrying.
Karen Hislop, from the North Alabama Rehabilitation Center, performed a physical capacities evaluation on Bolding and came to essentially the same conclusions as Dr. Sher-rill. She determined that Bolding had limitations for primary walking, standing, sitting, lifting, and carrying.
Bolding’s vocational expert, Patsy Bram-lett, found that Bolding has at least a 50 percent reduction in earning capacity. She said that he could not go back to his former occupation as a master electrician and that he would have difficulty obtaining gainful employment because of his age (58 years) and physical limitations.
Fluorocarbon’s vocational expert, Tom Clark, acknowledged that Bolding would have difficulty finding a new job and working as a master electrician, because of his disabilities. He determined that Bolding had a 27% loss of earning capacity and a 29% reduction in average wage earnings, for a total vocational disability rating of 27-31%. However, he testified that his rating would now be lower than this original assessment, based on the functional capacities evaluation, which he reviewed for the first time at trial. He said the evaluation gave fewer restrictions than he had used in his original calculations.
The trial court found that Bolding suffered an 11% permanent partial disability and an inability to earn in the amount of 11%. Bold-ing appeals. Bolding contends that the trial court erred in not finding him to be permanently and totally disabled and in finding that he had suffered only an 11% permanent partial disability and inability to earn.
Our review in workmen’s compensation eases is limited. First, we must determine whether there is any legal evidence to support the trial court’s findings. If such evidence is found, we must then determine whether any reasonable view of that evidence supports the trial court’s judgment. Ex parte Eastwood Foods, Inc., 575 So.2d 91 (Ala.1991). “Where one reasonable view of the evidence supports the trial court’s judgment, the judgment must be upheld, even if another, perhaps better reasoned, view of the evidence might have dictated a different outcome.” Ex parte Veazey, 637 So.2d 1348, 1349 (Ala.1993).
Bolding first contends that the trial court erred in not finding him to be permanently and totally disabled. Our review of the record reveals that there was no legal evidence to support the trial court’s finding as to this issue. Fluorocarbon’s vocational expert testified that Bolding had, at most, a 27-31% total vocational disability and that Bolding was of above-average intelligence. Dr. Sherrill gave Bolding a physical disability rating of an 11% impairment to the body as a whole. Bolding’s vocational expert testified that he had a 50% loss in ability to earn. Additionally, Bolding suffered a subsequent injury to his right knee, which contributed to his overall disability, along with his other health problems, such as arthritis.
*1310 Next we must determine whether any reasonable view of the evidence supports the trial court’s finding of no permanent and total disability. “The test for permanent and total disability is the inability to perform one’s trade and the inability to find gainful employment.” Mead Paper Co. v. Brizendine, 575 So.2d 571 (Ala.Civ.App.1990). Although both vocational experts testified that it would be difficult for Bolding to obtain employment, because of his age and physical disabilities, they did not find that he would be unable to find employment at all. We find that a reasonable view of the evidence supports the trial court’s failure to find that Bolding was permanently and totally disabled. Therefore, we find that the trial court did not err in its finding of no permanent and total injury.
Bolding next contends that the trial court erred in finding that Bolding had suffered only an 11% partial disability and loss of earning capacity. Bolding asserts that the trial court based its finding of disability solely on Dr. Sherrill’s assessment of the percentage of physical disability. We agree. Even if we were to find that there is legal evidence to support the trial court’s finding, we find that no reasonable view of that evidence supports the trial court’s judgment.
When an employee’s permanent partial disability does not involve an injury to a scheduled member, the amount of compensation due him is determined by a formula in § 25-5-57(a)(3)g., Ala.Code 1975, which uses the employee’s loss of earning ability as the determining factor. See Smither v. International Paper Co., 540 So.2d 760 (Ala.Civ.App. 1989). “[T]he criteria for determining permanent partial disability are not controlled by a finding of physical disability. Physical disability is merely one of many factors in the determination of the worker’s loss of ability to earn.” Id. at 762. In Smither, the trial court found that the employee suffered a 10% permanent partial disability to the body as a whole. The employee’s treating physician had found that the employee suffered a 10% physical disability, but the only evidence of lost earning capacity showed a much greater loss. This court found that there was no legal evidence to support the trial court’s finding and remanded the case for a proper determination of the amount of permanent partial disability.
Here, the trial court found that Bolding “suffers a permanent partial disability and an inability to earn a living to the extent of eleven percent.” The only evidence that indicates an 11% disability of any kind is Dr. Sherrill’s assessment of an 11% physical impairment to the body as a whole. The testimony of both parties’ vocational experts was that Bolding had suffered a much higher percentage of loss of ability to earn. Although Fluorocarbon’s vocational expert testified that he would probably lower his disability rating after reviewing the physical capacities evaluation, there is nothing in the record to indicate that he would have given Bolding a rating as low as an 11% loss of ability to earn.
It is obvious that the trial court improperly used the amount of physical disability as the amount of lost earning capacity. See Smith-er, supra, at 762. Because the only evidence of an 11% disability is the doctor’s assessment of physical disability, and because this cannot be the sole basis for a finding of loss of earning capacity, there is no legal evidence to support the trial court’s finding of only an 11% loss of earning capacity. However, even if we were to find that the doctor’s assessment of physical disability met the first Eastwood prong of “any legal evidence” to support the trial court’s findings, we hold that no reasonable view of that evidence supports the trial court’s judgment. No reasonable view of the evidence in this ease supports the trial court’s finding of an 11% inability to earn a living, given that the only evidence presented as to loss of earning ability showed a loss much greater than 11%. Therefore, we must reverse the judgment and remand this case for a proper determination of the amount of permanent partial disability suffered by Bolding.
The trial court’s judgment is reversed and this cause is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
MONROE and CRAWLEY, JJ., concur.
*1311 ROBERTSON, P.J., concurs in the result only.
THIGPEN and YATES, JJ., dissenting.

. We note that because of the date of injury, the Workmen's Compensation Act, as it read before the amendments of May 19, 1992, is controlling, and the substantial evidence standard of review does not apply.