Safeco Insurance Companies appeals from a trial court's judgment awarding David Blackmon benefits under the *Page 534 
Alabama Workers' Compensation Act. We reverse the trial court's judgment.
Blackmon has worked in the insurance business since graduating from college in 1973. During the almost 28 years between Blackmon's graduation and the time of trial, Blackmon worked for several insurance companies before working for Safeco. For one of these, Hartford Insurance Company, Blackmon worked for approximately 19 years. He began work for Hartford as a claims adjuster and was eventually promoted to the position of claim manager; in that position he was responsible for his entire office and all of the claims processed by that office. This managerial position entailed supervising of 10 to 15 employees, as well as overseeing the budget. After leaving Hartford, Blackmon worked for another national insurance company as a supervisor.
Blackmon went to work for Safeco in 1990 as a claims representative, a position he continued to hold at the time of trial. As a claims representative, Blackmon does not manage or supervise any other employees, and he is not responsible for the budget; he is a salaried employee. Until the summer of 1998, Blackmon's average monthly caseload with Safeco was somewhere between 100 and 130 claims, an amount Blackmon described as manageable.
For a two-to three-month period during the summer of 1998, Blackmon's caseload increased to between 150 and 200 claims per month. At the time, Safeco had acquired another insurance company and a number of employees had resigned during the transition, forcing the claims adjusters who remained with the company to absorb the workloads of those adjusters who had resigned. In addition to the increased workload during the period, Safeco was in the process of converting from a paper-based record keeping system to a computerized system. Blackmon testified that he had no experience with computers and that he found these changes in technology to be tedious and time-consuming, causing him to fall further behind in his work. Although Safeco adjusters were required to work 37.5 hours per week, each adjuster was also required to perform the essential work on all assigned claims in a timely fashion, and it appears from the record that the 37.5-hour figure represented a minimum requirement, not a maximum requirement. Consequently, for a period of two to three months ending on September 8, 1998, Blackmon worked 70-75 hours per week.
On September 8, 1998, Blackmon came to work at about 7:00 a.m., turned on his computer, and began to read his E-mail. He testified that he was looking around his office, feeling overwhelmed by his workload, when he felt his "whole body just like started from the tip of my toes up — just like heated up, and it was like somebody was inside my chest with a sledgehammer just trying to beat their way out of my chest."
Blackmon testified that he immediately took two aspirins and told a coworker that he would be going to the emergency room because he felt like he was having a heart attack. Blackmon went to the emergency room at Brookwood Hospital in Birmingham; he was admitted to the hospital for testing. Dr. David Jackson, who became Blackmon's treating physician, testified by deposition. He stated that he had diagnosed Blackmon with unstable angina pectoris.[1] After performing a heart catheterization *Page 535 
and coronary arteriogram, Dr. Jackson concluded that Blackmon was suffering from two-vessel coronary-artery disease.[2] A procedure called "rotational atherectomy"[3] was performed on Blackmon. After the affected arteries were cleared by the atherectomy, Dr. Jackson placed two "stents," or tubes, inside one of the arteries to help keep it open. These procedures were successful and, according to Dr. Jackson, the affected arteries were left with "zero percent blockage," and were "completely opened up." Blackmon was discharged on September 9, 1998, the day after the procedure, and was told he could return to work on the following Monday.
When questioned at his deposition on the causation of Blackmon's illness, Dr. Jackson explained that he believed that multiple factors had combined to cause Blackmon's condition, including: Blackmon's brief history of smoking, his family history of heart disease,[4] his high blood pressure, his high cholesterol, and stress. Dr. Jackson explained that it was impossible to separate the factors and assign a degree of significance to each one, although he did state that he did not believe that Blackmon's smoking history was very significant because he had smoked for such a brief period and had ceased smoking so long ago.
Blackmon was readmitted to the hospital with complaints of chest pain on September 14, 1998. He was evaluated by one of Dr. Jackson's partners who performed a cardiac catheterization on Blackmon, determined that there were no new blockages, and confirmed that the stents that had been surgically placed in Blackmon's arteries during his previous hospital admission were performing well. Dr. Greg Champion, a gastroenterologist, performed some tests and concluded that Blackmon suffered from gastroesophageal reflux disease, and surmised that this had caused his chest pain. Dr. Jackson saw Blackmon in his office for a follow-up visit on September 24, 1998, and noted that Blackmon had returned to work and was recuperating well.
On October 22, 1998, Dr. Jackson wrote a letter to Angela Luse, a representative of Safeco's workers'-compensation insurance carrier, to inform her that, in his opinion, stress experienced by Blackmon in connection with his work had been a contributing factor in causing Blackmon's coronary artery disease. Dr. Jackson wrote a second letter on September 30, 1999, to Wendy Thornton, an attorney whom Blackmon had retained to assist him in the recovery of workers'-compensation benefits for injuries he claims were related to the work he performed at Safeco. In the letter he stated that Blackmon's coronary-artery disease appeared to be well under control following the performance of the 1998 surgical procedure and Blackmon's modification of his lifestyle and diet. In the letter, Dr. Jackson further stated:
 "The coronary artery disease development is, therefore, in my opinion, multifactorial, and I do not believe that one *Page 536 
can isolate one risk factor as the most important. However, I do believe that if he worked 70-75 hours a week as an insurance adjuster, that over the years that may have contributed to the development of his coronary artery disease.
 "As far as I am able to determine from his current physical status he certainly is able to be gainfully employed. I would not suggest that he do heavy physical labor or seriously stressful activities, nor do I think that he should work long hours, and would recommend a normal work week of 40-45 hours or so. I do not feel that he should be particularly limited otherwise.
 "I do think that it might be useful for an expert in the area of stress and its relationship to heart disease and other disorders be consulted."
On January 7, 1999, Blackmon sued Safeco, seeking reimbursement of medical expenses and disability benefits related to his coronary-artery disease. The matter proceeded to a bench trial at which Blackmon, Paul Mangum (Blackmon's supervisor), and Dr. Duane Randleman (Safeco's medical expert) each testified. As noted, the deposition testimony of Dr. Jackson also was received into evidence, as were Blackmon's medical records. Dr. Jackson testified that, in his opinion, "stress [was] a definite risk factor for coronary artery disease." Dr. Randleman, a thoracic surgeon, testified that he had reviewed Dr. Jackson's medical records and Dr. Jackson's deposition, but that he had never examined Blackmon. Although Dr. Randleman agreed with Dr. Jackson that a family history of heart disease, high blood pressure, and an elevated cholesterol level were all risk factors, he testified that stress was not a factor in causing the build-up of plaque in coronary arteries, or coronary-artery disease. He therefore disagreed with Dr. Jackson's opinion that stress had contributed to Blackmon's coronary-artery disease.
Blackmon testified that he was currently employed in the same position with Safeco that he held at the time of the September 8, 1998, incident, but that he was making a slightly higher wage due to a merit-based salary increase. He further testified that he was working fewer hours because he had consciously disciplined himself in order to reduce his work-week to 40 to 45 hours per week on the advice of his physician, Dr. Jackson.
The trial court found that Blackmon had returned to work at a slightly higher wage than he was earning before his treatment by Dr. Jackson. Nonetheless, the trial court concluded that Blackmon had a 30% physical impairment to the body as a whole.
Safeco appeals, contending that the trial court erred in ruling that Blackmon's heart condition arose out of and in the course of his employment. Safeco also contends that the trial court erred in finding that Blackmon suffered a 30% physical impairment.
We begin our analysis by noting that this case appears to involve a disease, not an "injury" as defined in Ala. Code 1975, § 25-5-1(9).[5] Ordinarily, in such a case, whether the employee's disease would be compensable would be governed by Ala. Code 1975, § 25-5-110 et seq., dealing with occupational diseases. In his complaint, however, Blackmon did not seek *Page 537 
recovery for an occupational disease, but for an "injury." Moreover, at trial, counsel for Blackmon advised the court, without objection, that the parties stipulated that there were two issues for the court to consider: (1) "whether the accident arose out of and in the course of the employment" and (2) "the extent of Mr. Blackmon's disability."
Although the transcript reflects counsel's use of the word "accident" in describing the first of these two issues, it is clear that the court and the parties alike applied the causation standards applicable to "nonaccidental injuries." Among other things, immediately after describing the two issues to which the parties had stipulated, counsel for Blackmon noted, without objection, that the "case that outlines the standard to use for causation and non-accidental injuries, which is what this case is about" was Ex parte Trinity Industries, Inc., 680 So.2d 262
(Ala. 1996). Consistent with Ex parte Trinity Industries and Ala. Code 1975, § 25-5-81(c), the trial court's judgment describes the first of the two stipulated issues as "[w]hether by clear and convincing evidence the employee's heart condition arose out of and in the course of his employment and whether medical causation was established."
The trial court therefore properly limited itself to examination of the above-described two issues, without addressing those limitations to recovery under the Act that are peculiar to occupational diseases. See
Ala. Code 1975, § 25-5-110 et seq. We must do the same. SeeContinental Eagle Corp. v. Mokrzycki, 611 So.2d 313 (Ala. 1992) (holding that issues not raised at the trial level cannot be considered for the first time on appeal). We turn first then to a consideration of the issues of legal and medical causation.
An employee bears the burden of proving that his injuries arose out of and in the course of his employment. See Ex parte Trinity Indus., Inc.,680 So.2d 262 (Ala. 1996). In cases involving nonaccidental injuries, the employee must prove both legal and medical causation to meet the "arising out of" requirement. See id. Furthermore, in cases involving gradual deterioration or cumulative stress, the employee must establish both legal and medical causation by clear and convincing evidence, rather than by a mere preponderance of the evidence. See Tallassee Super Foods v.Hepburn, 771 So.2d 477 (Ala.Civ.App. 2000); § 25-5-81(c), Ala. Code 1975. Under the Workers' Compensation Act, "clear and convincing evidence" is defined as
 "evidence that, when weighed against evidence in opposition, will produce in the mind of the trier of fact a firm conviction as to each essential element of the claim and a high probability as to the correctness of the conclusion. Proof by clear and convincing evidence requires a level of proof greater than a preponderance of the evidence or the substantial weight of the evidence, but less than beyond a reasonable doubt."
Ala. Code 1975, § 25-5-81(c).
To establish legal causation, the injured employee must prove that "the performance of the duties for which he [or she] is employed . . . as an employee expose[d] [him or her] to a danger or risk materially in excess of that to which people not so employed are exposed [ordinarily in their everyday lives]." Ex parte Trinity Indus., Inc., 680 So.2d at 266
(quoting City of Tuscaloosa v. Howard, 55 Ala. App. 701, 705,318 So.2d 729, 732 (Ala.Civ.App. 1975)). In the present case, we conclude that Blackmon failed to provide sufficient evidence tending to show that his job as an insurance adjuster for Safeco exposed him to a risk materially in excess of that to which people not so employed are generally exposed. *Page 538 
Blackmon worked as an insurance adjuster for almost 28 years. During that time, he held positions with much higher levels of responsibility than the level of his responsibility at Safeco. During the summer of 1998, Blackmon experienced, in addition to the stress of his work, stress from several major life changes, including a recent divorce, the death of his father, and sending his daughter to college. In their everyday lives, people often are exposed to temporary periods of significant stress. There was little evidence from which the trial court could conclude that the stress Blackmon experienced at work for the two to three months in question was more severe than what people generally are exposed to at some time or another in their everyday lives. After carefully reviewing the record before us, we conclude that the evidence was not of such weight and quality that the trial court reasonably could have found it to clearly and convincingly prove that Blackmon's performance of his duties at work during those two to three months exposed him to a risk or danger materially in excess of that to which people are exposed in their everyday lives.
With respect to medical causation, an employee must show that the risk to which he or she was exposed was, in fact, a contributing cause of the employee's injury. Further, as previously noted, Blackmon was required in this case to prove such causation by clear and convincing evidence.
The evidence presented showed that, on September 8, 1998, after arriving at work and beginning to check his E-mails, Blackmon began experiencing chest pains. Blackmon testified that he had been experiencing similar, though less severe, pains for the previous sixmonths. Those six months would have included at least three months that fell before the two-to three-month period of 70- to 75- hour workweeks that are at issue.
Further, although Dr. Jackson testified in his deposition that, in his opinion, Blackmon's stress was a risk factor for his coronary artery disease, he necessarily did so in the context of what he understood with respect to the history of that stress (i.e., its intensity and duration). That history, as understood by Dr. Jackson, was reflected in Dr. Jackson's September 1999 letter to Blackmon's attorney in which Jackson opined that "if [Blackmon] worked 70-75 hours a week as an insurance adjuster, that over the years that may have contributed to the development of his coronary artery disease." (Emphasis added.) Dr. Jackson's deposition testimony reaffirmed this understanding of Blackmon's work history:
 "Q. You also indicate in that letter that Mr. Blackmon felt that he was under a great deal of stress at work. And I guess ultimately you considered that as one of the stress factors, or one of the factors which would contribute to the development of this [arteriosclerotic heart disease]?
"A. Right.
 "Q. Now, you mentioned in a letter to [Blackmon's attorney] that Mr. Blackmon had told you that he worked 70 to 75 hours a week over the years.
"A. Uh-huh (in the affirmative). Yes.
 "Q. What other activities or aspects of Mr. Blackmon's job did he relate to you?
 "A. I don't recall. Let me see. . . . Right at this point I don't recall any other information about his work.
 "Q. So it would just be essentially based on him telling you he worked 70, 75 hours a week?
"A. Yes." *Page 539 
(Emphasis added.) When later asked whether, if Mr. Blackmon had only worked 37½ hours a week, he would have considered that to be enough "working hours for [him] to consider it a factor in the development of" Blackmon's heart disease, Dr. Jackson answered in the negative.
The period during which Blackmon worked for 70 to 75 hours per week was only two to three months. After a careful review of the record, we conclude that it does not contain sufficient evidence from which the trial court could have reasonably concluded that Blackmon clearly and convincingly proved that his heart condition was, in fact, caused by a materially excessive risk to which he was exposed in his employment.
We now turn to the second issue addressed by the trial court, whether Blackmon suffered any physical impairment and, if so, to what degree. Under the Workers' Compensation Act, compensation due an employee for an injury not otherwise enumerated in the Act is governed by § 25-5-57(a)(3)g., Ala. Code 1975. According to that Code section, a permanent, partial disability is compensable according to the claimant'sloss of earning capacity. See, e.g., Johnson v. Alabama Power Co.,670 So.2d 39 (Ala.Civ.App. 1993); Bolding v. Fluorocarbon Co.,660 So.2d 1308 (Ala.Civ.App. 1995); Smither v. International Paper Co.,540 So.2d 760 (Ala.Civ.App. 1989).
Section 25-5-57(a)(3)i., Ala. Code 1975, governs the award of permanent partial disability benefits when a claimant returns to work at a wage equal to or higher than the wage he was earning at the time of his injury. That Code section provides, in pertinent part, that if
 "an injured worker returns to work at a wage equal to or greater than the worker's pre-injury wage, the worker's permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability."
In this case, Blackmon's earnings after the September 8, 1998, incident were equal to or higher than his earnings before the incident. The trial court, therefore, could not properly have considered any evidence of vocational disability, but instead was limited to a determination of whether and to what extent Blackmon had suffered a physical impairment. Safeco argues that there is no evidence indicating that Blackmon suffered a permanent impairment, and therefore the present case is distinguishable from Ex parte Trinity Industries, in which the employee actually suffered a stroke and the permanent impairment resulting therefrom. Instead, according to Safeco, Blackmon suffered from a disease — coronary-artery disease — which was corrected by his treating physician. Indeed, the evidence was undisputed that, as a result of Dr. Jackson's successful treatment of Blackmon's disease, Blackmon did not suffer a heart attack. Accordingly, Blackmon was able to return to work full-time — 40 to 45 hours per week — with no other limitations.[6] Safeco *Page 540 
therefore argues that a finding that Blackmon suffered any injury or that an injury has caused Blackmon to suffer a 30% physical impairment is not supported by substantial evidence. See Discovery Zone v. Waters,753 So.2d 515 (Ala.Civ.App. 1999). In light of our disposition of this case on the grounds discussed above, however, we need not decide this final issue.
We are cognizant of the fact that the Workers' Compensation Act does not "alter the rule that this court does not weigh the evidence before the trial court." See Edwards v. Jesse Stutts, Inc., 655 So.2d 1012,1014 (Ala.Civ.App. 1995). However, after carefully reviewing the record in the present case, we must conclude that the record in this case was not such as would allow the trial court to reasonably conclude that Blackmon proved both legal causation and medical causation by clear and convincing evidence. Accordingly, the judgment of the trial court is reversed, and the cause is remanded for the entry of a judgment consistent with this opinion.
REVERSED AND REMANDED.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
Yates, P.J., dissents.
YATES, Presiding Judge, dissenting.
Because I believe that Blackmon proved both legal and medical causation by clear and convincing evidence, I must respectfully dissent from the main opinion.
For an injury to be compensable, it must be "caused by an accident arising out of and in the course of" the employee's employment. § 25-5-51, Ala. Code 1975. The phrase "arising out of" an employee's employment requires a causal connection between the injury and the employment. Dunlop Tire Rubber Co. v. Pettus, 623 So.2d 313
(Ala.Civ.App. 1993). The phrase "in the course of" the employee's employment refers to the time, place, and circumstances under which the accident occurred. Id. To establish causation in a workers' compensation case where the injury is nonaccidental, i.e., where the injury was not caused by some sudden and unexpected external event, an employee must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation. Ex parteTrinity Indus., Inc., 680 So.2d 262 (Ala. 1996). See also City ofTuscaloosa v. Howard, 55 Ala. App. 701, 318 So.2d 729 (Ala.Civ.App. 1975). To prove "legal causation," one need only establish that "the performance of his or her duties as an employee exposed him or her to a `danger or risk materially in excess' of that to which people are normally exposed in their everyday lives." Ex parte Trinity Indus.,Inc., 680 So.2d at 267, quoting Howard, 55 Ala. App. at 705,318 So.2d at 732. To establish medical causation, a claimant "must produce substantial evidence tending to show that the exposure to risk or danger proven in step one of the Howard test `was in fact [a] contributing cause of the injury' for which benefits are sought." Ex parte Trinity Indus., Inc.,680 So.2d at 269, quoting Howard, 55 Ala. App. at 706, 318 So.2d at 732. Additionally, for cases involving gradual deterioration or cumulative stress, the employee must prove by clear and convincing evidence both legal and medical causation. § 25-5-81(c), Ala. Code 1975.
The evidence presented in this case indicates that Blackmon's caseload had *Page 541 
increased by 50 or more claims per month; that because some adjusters had resigned their employment, Blackmon had to absorb additional workload; that Safeco was converting to a new computer system and Blackmon found these changes to be tedious and time-consuming, because he had had no experience with computers; and that Blackmon had been working 70 to 75 hours per week for several months in order to manage his caseload. I conclude that these factors exposed Blackmon to "`danger or risk materially in excess' of that to which people are normally exposed in their everyday lives." Ex parte Trinity Indus., Inc., 680 So.2d at 267, quoting Howard, 55 Ala. App. at 705, 318 So.2d at 732. Additionally, the expert medical testimony of Dr. Jackson, Blackmon's treating physician, indicates that the stress associated with Blackmon's employment, including the 70- to 75- hour work week, contributed to his coronary artery disease.
Accordingly, I would affirm the judgment of the trial court; therefore, I dissent from the main opinion.
[1] Dr. Jackson explained that the diagnosis of "unstable angina pectoris" meant that the patient was suffering pain in the heart related to narrowed heart arteries. He further explained that he considered such a condition to be an acute emergency requiring hospitalization and treatment to prevent the onset of a heart attack.
[2] Dr. Jackson explained in his deposition that this meant that two artery branches providing blood to the heart were irregular and narrowed, with calcium deposits causing blockages of 40% to 50% in one of the vessels and 75% to 80% in the other.
[3] The procedure involved using ultrasound to determine direction and lowering a rotating tube with a burr on the end inside the affected artery to ream the artery and open it for more normal blood flow.
[4] Blackmon's mother had suffered from heart problems and had had a pacemaker implanted.
[5] The trial court repeatedly referred to Blackmon's condition as one of a coronary-artery "disease." In the "conclusions" portion of its judgment, the trial court referred in the same sentence to Blackmon's condition as involving both a "nonaccidental injury" and a "disease." The record indicates that Dr. Jackson successfully treated that disease before a heart attack or any other "injury" resulted therefrom.
[6] Dr. Jackson testified in his deposition that he advised Blackmon that "he could go back to full-time [work], and do whatever he ordinarily did." Dr. Jackson also testified that "I told him he could go back to work, and not only that, he could begin to move back towards jogging and build that up over the next four to eight weeks." (The record indicated that Blackmon jogged three to five miles per day before the September 8, 1998, incident.) With Dr. Jackson's approval, Blackmon not only resumed full-time employment with Safeco of 40 or more hours per week, making equal to or more in wages than he made before the September 8, 1998, incident, he also began weight training and resumed jogging three to five miles each day. Dr. Jackson also testified that he saw Blackmon for the last time on August 29, 2000, and that Blackmon told Dr. Jackson at that time that "[h]e was feeling great. He was jogging and doing some weight training, and was not having any symptoms with that. Hasn't had any heart symptoms. By that time he said he was working 40 or 50 hours per week."