YATES, Presiding Judge,
dissenting.
Because I believe that Lanthrip suffered a loss of earning capacity, I must respectfully dissent from the main opinion.
At the time of her injury, Lanthrip was working three jobs: she worked as a deli stocker at Wal-Mart, as a school bus driver, and as a security guard at Raytheon for Security Engineers. Following surgery on her left foot, Lanthrip returned to work at all three jobs. However, she was forced to leave her security-guard position because the injury to her foot prevented her from fulfilling the requirements of that job.
Lanthrip’s post-injury work at Wal-Mart was in a different position than her pre-injury job — one that required the performance of duties that were within her permanent restrictions.[3] At the time of *1087 her injury, and when she initially returned to work at Wal-Mart, Lanthrip earned $6.00 per hour. At the time of trial, Lanr thrip was working as a greeter at Wal-Mart earning $8.30 per hour. Although Lanthrip was unable because of her injury to work as many hours each week at Wal-Mart as she did before her injury, because she received a higher hourly wage, her earnings from Wal-Mart after she reached maximum medical improvement were greater than her earnings from Wal-Mart before her injury.
After her injury, Lanthrip also returned to work as a school bus driver at her pre-injury hours and hourly wage. The evidence tended to indicate, however, that because Lanthrip ultimately was unable to continue her employment as a security guard, her total earnings from all her jobs at the time of trial were less than her total earnings from all her jobs before her injury.
Lanthrip argues that, although only her wages at Wal-Mart could properly be considered in determining the “average weekly wage” upon which Wal-Mart must base its workers’ compensation payments to her (see § 25-5-57(b), Ala.Code 1975), all of her employment should be considered in determining whether she suffered a loss of earning capacity. The trial court rejected this argument. Because Lanthrip’s post-injury earnings at Wal-Mart, alone, were equal to or greater than her earnings at Wal-Mart before her injury, the trial court concluded that Lanthrip met the “return-to-work” provisions of § 25-5-57(a)(3)i., and was presumed to have no loss of earning capacity.
When an injury to an employee covered under the Workers’ Compensation Act results in permanent-partial disability, § 25-5-57(a)(3)a., Ala.Code 1975, provides, in part, that the employee’s compensation under the Act shall be based upon “the extent of the disability.” When the injury is not to a scheduled member under § 25-5-57(a)(3)a., compensation is further governed by § 25-5-57(a)(3)g., which provides, in pertinent part, that
“compensation shall be 66 2/3 percent of the difference between the average weekly earnings of the worker at the time of the injury and the average weekly earnings he or she is able to earn in his or her partially disabled condition, subject to the same maximum weekly compensation as stated in Section 25-5-68.”
As this court held in Discovery Zone v. Waters, 753 So.2d 515 (Ala.Civ.App.1999):
“According to [§ 25-5-57(a)(3)g., Ala. Code 1975], a permanent, partial disability is compensable according to the claimant’s loss of earning capacity.
“ ‘For a permanent partial injury, the measure of workmen’s compensation is loss of earning capacity. If an employee’s post-injury wages are the same or higher than his pre-injury wages, a presumption arises that no loss of earning capacity has occurred. The presumption may be rebutted by evidence which demonstrates incapacity or which explains why the higher wages are an unreliable basis for determining the employee’s earning capacity.’
“Johnson v. Alabama Power Co., 670 So.2d 39, 41-42 (Ala.Civ.App.1993) (citations omitted); see, e.g., Bolding v. Fluorocarbon Co., Reeves Rubber Div., 660 So.2d 1308, 1310 (Ala.Civ.App.1995) (holding that claimant’s loss of earning ability is the determining factor); and Smither v. International Paper Co., 540 *1088 So.2d 760, 762 (Ala.Civ.App.1989) (stating that the amount of compensation due an employee is governed by § 25-5-57(a)(3)g. and that loss of earning ability is the determining factor).
“Section 25-5-57(a)(3)i., Ala.Code 1975, governs the award of permanent partial-disability benefits when a claimant returns to work at a wage higher than the wage he was earning at the time of his injury. That section provides in pertinent part that if
“ ‘an injured worker returns to work at a wage equal to or greater than the worker’s pre-injury wage, the worker’s permanent partial disability rating shall be equal to his or her physical impairment and the court shall not consider any evidence of vocational disability.’
“ § 25 — 5—57(a)(3)i.”
753 So.2d at 517.
The strictures of § 25-5-57(a)(3)i. apply when an injured worker returns to work at a wage equal to or greater than his or her pre-injury wage. No reference is made in § 25-5-57(a)(3)i. to a return to work in the same employment in which the worker was injured. Thus, in Discovery Zone, this court applied the above presumption of no loss of earning capacity when the employee returned to work for a different employer than that for which he was working at the time of his injury, because he earned higher wages than he had earned before his injury. 753 So.2d 515.
In fairness and logic, if returning to work in a different employment (indeed, with a different employer) than that in which the employee was injured is to be considered for purposes of determining whether the return-to-work requirement of § 25-5-57(a)(3)i. is satisfied, it stands to reason that the inability to return to work in a different employment than that in which the employee was injured (but at which the employee actually was employed at the time of the injury) must be considered for the same purpose. In this case, because she was unable to return to one of the three employers with whom she was working at the time of her injury, Lan-thrip’s total earnings after her injury were less than her total earnings before the injury. Therefore, § 25-5-57(a)(3)i. and the presumption that an employee has suffered no loss of earning capacity when her post-injury wages are the same or higher than her pre-injury wages, are not applicable.
The employer notes that the calculation of average weekly wages under the Workers’ Compensation Act is based upon wages earned in the employment in which the employee was injured, and that this court ought to apply this same standard to the term “wage” in § 25-5-57(a)(3)i. The statutes governing these two determinations are different, however. The calculation of the average weekly wage is governed by § 25-5-57(b), which specifically provides for a calculation based on the “wages ... of the injured employee in the employment in which he or she was working at the time of the injury.” See Ex parte Fryfogle, 742 So.2d 1258 (Ala.1999). In contrast, the restrictions of § 25-5-57(a)(3)i. apply merely when an injured worker returns to work under the specified conditions. The latter statute does not, by its terms, limit itself to a return by an employee to “the employment in which [the injured employee] was working at the time of the injury.”
The employer also argues that, because a second job taken by the employee in American Cast Iron Pipe Co. v. Uptain, 680 So.2d 378 (Ala.Civ.App.1996), was not considered by this court for purposes of calculating the employee’s wages under § 25-5-57(a)(3)i., the employee’s inability in the present case to perform a “second *1089 job” should not be considered for that purpose. There is a tension between the holding in Uptain and the more recent holding of this court in Discovery Zone. I note that the Uptain court did not expressly analyze the proper manner in which § 25 — 5—57(a)(3)i. should be construed. I believe that the analysis set forth above is the better-reasoned approach to the issue presented; therefore, I must respectfully dissent.

. When she initially returned to work at Wal-Mart following her injury, Lanthrip's limita *1087 tion was that she was required to sit 100 percent of the time; eventually, this was changed to require her to sit 80 percent of the time.