884 So.2d 867 (2003)
ELDECO, INC.
v.
Ted ROMINES.
2020278.
Court of Civil Appeals of Alabama.
August 29, 2003.
*868 Lisa D. Van Wagner, Bart Harmon, and C. Richard Hill, Jr., of Webb & Eley, P.C., Montgomery, for appellant.
J. Chris Cochran of Pittman, Hooks, Dutton, Kirby & Hellums, P.C., Birmingham; and Jimmy S. Calton, Sr., Eufaula, for appellee.

On Application for Rehearing
THOMPSON, Judge.
This court's no-opinion affirmance dated May 23, 2003, is withdrawn, and the following opinion is substituted therefor.
Ted Romines sued his employer, Eldeco, Inc. ("Eldeco"), seeking workers' compensation benefits for an alleged injury that, he maintained, rendered him permanently and totally disabled. On May 15, 2001, the trial court conducted an ore tenus hearing. Eldeco moved for a judgment as a matter of law, arguing that Romines's claimed injury was not one for which he was entitled to benefits under the Workers' Compensation Act, § 25-5-1 et seq., Ala.Code 1975 (hereinafter "the Act").
On October 10, 2001, the trial court entered an order denying Eldeco's motion for a judgment as a matter of law. In that order, the trial court stated that the parties had an additional 60 days from the date of that order to submit any additional evidence. Eldeco appealed to this court from the October 10, 2001, order (that appeal is hereinafter referred to as "the first appeal"). This court concluded that the October 10, 2001, order was not a final judgment that would support an appeal, and it dismissed the first appeal without an opinion. After this court's dismissal of the first appeal, the exhibits submitted to this court pertaining to that appeal were returned to counsel for Eldeco.
The trial court, on September 16, 2002, entered a judgment finding Romines to be permanently and totally disabled as a result of an on-the-job nonaccidental injury. In that judgment, the trial court specifically incorporated the findings and conclusions of law it had reached in its October *869 10, 2001, order. In the September 16, 2002, judgment, the trial court noted that:
"3. The court allowed the parties an additional 60 days after the entry of the October 10, 2001, order to provide the court with any additional information and/or evidence bearing on the issues in this case.
"4. Having considered all the evidence, including the submissions of evidence after October 10, 2001, the court finds...."
Eldeco appealed from the September 16, 2002, judgment. On Eldeco's motion, this court incorporated into the present record on appeal the record from the first appeal.
On original submission of this appeal, Eldeco argued that the trial court erred in awarding Romines benefits under the Act because, it argued, that Act does not recognize a claim such as the one asserted by Romines. Eldeco also argued that Romines was not entitled to compensation for his claimed injury, which Romines characterized at trial as a nonaccidental injury, because, Eldeco argued, Romines did not present clear and convincing evidence that his job duties exposed him to a "`danger or risk materially in excess' of that danger to which all persons are ordinarily exposed in their everyday lives." See Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996) (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 705, 318 So.2d 729, 732 (Ala.Civ.App.1975)).
At the May 15, 2001, hearing, the parties presented no expert medical testimony. At that hearing, Romines offered into evidence the depositions of two doctors and another witness; those depositions, however, were never formally admitted into evidence. Also at the May 15, 2001, hearing, the parties discussed the possibility of taking the depositions of additional witnesses. It is not clear from the record which, if any, of those additional depositions were actually taken. It is clear, however, that at least some depositions, apparently the ones Romines offered into evidence, were submitted to the trial court, because the trial court referenced the testimony of Dr. Melvin Oakley, one of the doctors whose depositions Romines offered into evidence, in its October 10, 2001, order. The trial court clerk's "Index of Exhibits" for the May 15, 2001, hearing designated, among other items, the exhibits admitted into evidence at that hearing and included the depositions of Dr. Oakley, Willard Chuck Bentley, and Dr. Randy McDaniel. Also, the parties seem to assume, given the language in their briefs on appeal, that those depositions were admitted into evidence. Although six other exhibits admitted into evidence at the May 15, 2001, hearing were contained in a volume of the record from the first appeal that was later incorporated into the record for the current appeal, the three above-listed depositions were not submitted to this court as a part of the record for the current appeal. Both parties referenced the testimony of Dr. Oakley in their briefs submitted to this court on original submission.
Further, the trial court's September 16, 2002, judgment notes that it considered evidence that each party submitted after the entry of the October 10, 2001, order. The record on appeal, including that portion of the record incorporated from the first appeal, does not contain any evidence submitted after the entry of the October 10, 2001, order. Neither party sought, pursuant to Rule 10(f), Ala. R.App. P., to supplement the record on appeal to include that, or any other, evidence in the record for the current appeal.
In its notice of appeal in the first appeal and in its notice of appeal from the trial court's September 16, 2002, judgment, Eldeco designated the entire record for inclusion in the record on appeal. Therefore, *870 on original submission in the current appeal, the clerk of this court, at the request of the author of this opinion, telephoned the trial court's clerk to inquire about the three missing depositions listed in the "Index of Exhibits" to the May 15, 2001, hearing. An employee in the trial court clerk's office indicated that those depositions were not in the clerk's office. In addition, also at the request of the author of this opinion, the clerk of this court inquired as to whether any materials, evidence, or exhibits had been filed in the office of the trial court's clerk after the entry of the October 10, 2001, order that provided for the filing of such materials but before the final judgment that referenced those materials. The employee of the trial court clerk's office indicated that no such materials or evidence had been filed and sent a copy of the case action summary detailing the action on the case up and until that date to this court for its review.[1] That case action summary indicated that no new evidentiary materials had been filed by either party after the entry of the trial court's October 10, 2001, nonfinal order.
On original submission, this court considered case law standing for the well-settled principle that where a trial court relies on evidence that is not contained in the record on appeal in reaching its judgment, this court must presume that that evidence was sufficient to support the trial court's judgment. This court also relied upon authority standing for the proposition that it is the appellant's duty to ensure that the record on appeal contains sufficient evidence to warrant a reversal, and the court affirmed the trial court's judgment without an opinion. In its no-opinion affirmance, this court cited Rule 10(f), Ala. R.App. P.; Alfa Mut. Gen. Ins. Co. v. Oglesby, 711 So.2d 938 (Ala.1997); Berryhill v. Mutual of Omaha Ins. Co., 479 So.2d 1250 (Ala.1985); Cofer v. Town of Good Hope, 655 So.2d 1028 (Ala.Civ.App.1995); Wilkens v. Kaufman, 615 So.2d 613 (Ala.Civ.App.1992); and State ex rel. Gibson v. Gibson, 555 So.2d 1092 (Ala.Civ.App.1989). This court's original decision was released on May 23, 2003.
On June 3, 2003, Eldeco moved for an extension of time to file an application for rehearing, contending that the trial court's clerk inadvertently omitted the three depositions listed in the "Index of Exhibits" for the May 15, 2001, hearing. This court granted Eldeco an additional seven days in which to file its application for rehearing. In the interim, the trial court's clerk submitted to this court the three depositions listed in the "Index of Exhibits" for the May 15, 2001, hearing, and the clerk also submitted a folder that contained other materials.[2]
Eldeco filed its application for rehearing in this court, and Romines filed an opposition to that application. In its brief on application for rehearing, Eldeco asked only that this court consider the three depositions omitted from the list of exhibits in the "Index of Exhibits" for the May 15, 2001, hearing. Romines, in his opposition brief, argued only the merits of the *871 appeal and did not make any argument pertaining to any other evidence that might have been omitted from the current record on appeal. The record contains no indication of, and the parties themselves have made no argument pertaining to, any evidence that might have been submitted to the trial court after the entry of the October 10, 2001, order. Therefore, after careful consideration, we elect to reach the merits of the appeal based on the record currently before this court and to consider the arguments as originally raised on appeal. Therefore, we grant Eldeco's application for rehearing.
Eldeco is a business which performs electrical contracting work. Romines, who was 63 years old at the time of the May 15, 2001, hearing in this matter, worked from 1978 to 1998 for Eldeco as a superintendent on its construction projects. The Eldeco employees who testified on behalf of Eldeco characterized Romines as a good employee and a hard worker.
In his testimony at trial, Romines described different jobs he had supervised for Eldeco from 1995 until 1998. In essence, Romines testified that, although he was on salary for a 40-hour work week, he often worked 70-80 hours per week. Romines stated that his superiors at Eldeco instructed him not to include more than 40 hours per week on his payroll sheets in order to keep the jobs on which he was working within budget. Although he insisted that he had to work more than 40 hours per week, Romines admitted that no one at Eldeco instructed him to do so.
Romines testified that he always felt pressure to bring a construction project he was supervising within or under its budget. Romines testified that it was necessary for him to be present at the construction sites at any time workers were present. Often, there were both day and night work crews. Romines stated he often put in long hours at the construction sites supervising those crews. In addition, on some jobs, Romines stated that he worked doing physical labor either with the crews or after the workers had left in order to help the project stay on schedule. Romines testified that, except for the time spent undergoing and recovering from a surgery in the early 1990s and a three-day period in which he visited his mother between jobs, he did not take any time off work, even for vacations.
Romines also stated that, although it was Eldeco's policy not to work on "hot" electrical circuitry,[3] during the renovation of a shopping mall in Biloxi, Mississippi, he was frequently required to do so because the electricity to the stores in the mall could not be disconnected during business hours. Romines explained that on that job he often worked on "hot" electrical circuitry because at least one of the workers on the job refused to do so.
Romines also detailed some labor problems he had on some of his jobs, including some workers' attempts at union organization and his suspicions that some crew members were using and selling illegal drugs on the job. Additionally, Romines testified regarding at least one personality conflict with the agent of another contractor who was also working on one of the projects he supervised.
Romines testified that on some jobs he lived at the construction site in his personal recreational vehicle. There was some dispute about whether anyone at Eldeco asked Romines to live on site at any of the construction sites. In any event, Romines and all other Eldeco supervisors were paid weekly allowances to offset the cost of *872 lodging while they were on the construction sites and away from their homes. Romines collected that weekly allowance during the time that he lived on site in his recreational vehicle.
Romines testified that in 1991 he was diagnosed with high blood pressure and that his doctor prescribed medication that controlled that condition. However, in 1997, he began experiencing some additional health problems and went to a doctor in Nashville, Tennessee. At that time, Romines was diagnosed with hypertensive heart disease. Romines's doctor told him that the condition could be treated with medication but that Romines needed to avoid stressful situations. Romines testified that he called the management office at Eldeco several times asking to be transferred to a less stressful project and that he asked to be demoted to the position of electrician.
Romines testified that the project he supervised involving the renovation of the shopping mall in Biloxi was a difficult job and that the danger on that job caused him a great deal of stress; Romines supervised that job from March 1996 through April 1997. After that job, Romines supervised the construction of a large movie-theater complex in Nashville. Romines testified that the Nashville job was also difficult and caused him stress. He explained that "[e]ven though the danger was there [at the shopping-mall renovation project] in Biloxi, [the] Nashville [movie-theater project] was just stress, mental stress just constantly."
After the completion of the Nashville movie-theater project, Romines went to work supervising the construction of a "chicken plant" in Eufaula. Romines said that that project was originally supposed to be a one-year project but that it was changed to a six-month project. According to Romines, because of design changes, the progress on that job fell behind. He also suspected certain workers of illegal drug use. Romines stated that the conditions of that job "just put stress on me." Romines testified that the management of Eldeco had agreed to conduct drug tests at the Eufaula construction site but that he was later informed that the tests had been cancelled. Romines stated that, upon hearing that the drug tests had been cancelled, he "went all to pieces."
Romines testified that the day after he learned that Eldeco had cancelled the planned drug tests, the stress of his job was bothering him and that, while driving between another Eldeco work site and the Eufaula chicken-plant work site, he experienced an episode of dizziness. Romines stated that he immediately sought treatment from Dr. Oakley and that Dr. Oakley hospitalized him. We note that Romines testified that this episode occurred on February 18, 1998, but Dr. Oakley testified that it occurred on February 25, 1998; the exact date of the February 1998 incident is not an issue on appeal. Romines did not return to work at Eldeco after February 1998.
The employees of Eldeco who testified at the May 15, 2001, hearing stated that Romines's jobs were no more stressful or difficult than any other supervisor's jobs. Those witnesses also agreed that Eldeco did not encourage its employees to work long hours or without vacations, as Romines had done. Three of those witnesses testified that a supervisor should delegate work to his work crew and that there was no reason for a supervisor to do work such as the work Romines testified he had performed on "hot" electrical wires. Ronnie Hannah, a supervisor for Eldeco, stated that there was nothing out of the ordinary about Romines's jobs but that Romines worked all the time regardless of whether his work duties called for it. Hannah also *873 stated that there was no need for a supervisor to stay on the project site late at night because the supervisor could delegate the supervision of the work being performed to another member of his work crew.
Dr. Oakley, a specialist in internal medicine, testified that he first treated Romines on February 18, 1998, when Romines reported feeling weak and dizzy and that he was experiencing chest and head pains. The results of an electrocardiogram and blood tests were normal, and Dr. Oakley recommended that Romines continue on his blood-pressure medication. During a follow up visit on February 24, 1998, Romines reported that he had headaches, that he remained weak, and that he was having difficulty tolerating stress. Dr. Oakley testified that his examination of Romines on that date was unremarkable but that he changed Romines's blood-pressure medication. Dr. Oakley released Romines to return to work, but recommended that he "opt for a less stressful working environment."
The next day, February 25, 1998, Romines returned to Dr. Oakley for an unscheduled visit because of an episode of "severe headache, confusion, blurring of vision, slurring of speech," among other symptoms; that episode occurred while Romines was driving to the Eldeco work site in Eufaula. Dr. Oakley admitted Romines to the hospital and conducted testing; that testing ruled out several physical causes of Romines's symptoms. On March 11, 1998, Dr. Oakley told Romines that he was not to return to work because he "appeared to be burned out."
In explaining the medical reason for Romines's not being able to return to work, Dr. Oakley testified that "[Romines] was handling the stress of his job so poorly that it was creating anxiety to the point that [Romines] was having basically surges of adrenalin running his blood pressure up, and concomitantly rendering him unable to function in his job." Dr. Oakley also stated that Romines's "stress at work caused him to have the problems that [Romines] was experiencing," and that, although the stress did not cause the high blood pressure, it did cause "the high blood pressure to be much more difficult to control." Dr. Oakley concluded that the stress Romines experienced on the job caused him to be disabled from performing his job.
In summarizing his conclusions in a letter addressed to the workers' compensation insurer for Eldeco, Dr. Oakley testified that he "told [the insurer] that [Romines] was suffering from a severe anxiety disorder complicated by depression." (Emphasis added.) During his testimony, Dr. Oakley read the following excerpt from his letter to the insurer:
"`[Romines's] hypertension[[4]] ... is labile and severe enough that it affects his health physically. [Romines's] anxiety is severe enough that it creates a physical problem  reference his hypertension and chest pain.
"`Mr. Romines's primary disabling diagnosis is his anxiety complicated by depression. This exacerbates his hypertension and causes chest pain. This renders him unable to function, and in my opinion, this is a permanent disability.'"
(Emphasis added.)
Romines did not return to work at Eldeco after February 1998; he instead chose to retire. Romines now receives Social Security disability benefits because of his hypertension. Since his retirement, Romines's *874 health conditions have been successfully controlled by his medications.
In his complaint, Romines alleged that he had suffered an "accident-related injury." However, at the May 15, 2001, hearing, Romines and the trial court addressed Romines's claim as one seeking compensation for a nonaccidental injury. In seeking recovery for a nonaccidental injury, a claimant must establish both legal causation and medical causation. See Ex parte Trinity Indus., Inc., supra (setting forth the requirements for establishing legal and medical causation of a nonaccidental injury). In its October 10, 2001, order, the trial court found that the stress Romines experienced while employed by Eldeco caused or aggravated the blood-pressure condition for which Romines sought workers' compensation benefits. In its September 16, 2002, final judgment, which expressly incorporated the findings set forth in the October 10, 2001, order, the trial court determined that Romines established both legal and medical causation under Ex parte Trinity Industries, Inc., supra, and it found that Romines was permanently and totally disabled as a result of "his on-the-job nonaccidental injury."
In essence, Eldeco does not dispute the trial court's factual finding that the stress Romines suffered toward the end of his employment with Eldeco caused Romines's high blood pressure to become unmanageable, which prevented Romines from being capable of maintaining employment. Rather, Eldeco challenges the trial court's determination that Romines's claim was compensable under the Act. Eldeco argues that the Act does not authorize recovery for a claim such as the one Romines has asserted. The issue regarding whether Eldeco is liable for paying workers' compensation benefits on Romines's claim can be reduced to the characterization of the nature of Romines's claim for those benefits; the parties dispute whether Romines's claimed injury should be classified as a "mental disorder or mental injury" or as a "physical injury."
Eldeco bases its argument on the Act's definition of an "injury" for which a claimant may recover an award of benefits. Specifically, in defining "injury," the Act provides that an "[i]njury does not include a mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body." § 25-5-1(9), Ala.Code 1975 (emphasis added). This court has recognized that in Ex parte Trinity Industries, Inc., supra, our supreme court defined a nonaccidental injury such as the one claimed by Romines to be "an injury `not produced by some sudden and traumatic external event." B E & K, Inc. v. Weaver, 743 So.2d 476, 480 n. 3 (Ala.Civ.App.1999) (quoting Ex parte Trinity Indus., Inc., 680 So.2d at 266) (emphasis added). "Under Alabama law, for an employee to recover for [mental injuries or] psychological disorders, the employee must have suffered a physical injury to the body and that physical injury must be a proximate cause of the psychological disorders." Ex parte Vongsouvanh, 795 So.2d 625, 628 (Ala.2000). Eldeco characterizes Romines's claim as one for a mental-injury disorder that was not produced by a work-related injury, and, therefore, Eldeco maintains that § 25-5-1(9) bars Romines's claim for workers' compensation benefits.
Romines admits that his claim is based on mental stress, as opposed to stressful physical exertion; however, Romines asserts that because his mental or emotional stress caused physiological symptoms, i.e., causing his high blood pressure to become unmanageable when he was in a stressful situation, he is entitled to recover for the physiological manifestations caused by his on-the-job stress. In characterizing his *875 claim as one seeking compensation for a nonaccidental injury, Romines explained his theory of recovery before the trial court by indicating that he was not seeking recovery for a mental disorder; rather, he was seeking an award of benefits for his symptoms relating to his hypertension, which he claimed was the "physical injury" resulting from his work-related mental stress.
At this juncture, we must point out that in Safeco Insurance Cos. v. Blackmon, 851 So.2d 532 (Ala.Civ.App.2002), this court noted that a claim seeking benefits for coronary-artery disease allegedly caused, in part, by work-related stress was more in the nature of an occupational disease than an injury or a nonaccidental injury. However, the court applied an analysis based on a theory of nonaccidental injury because that is the theory under which the case was tried before the trial court. Safeco Ins. Cos. v. Blackmon, supra. Similarly, in this case, neither the parties nor the trial court considered the issue whether Romines's claim should be treated as a claim for benefits for an occupational disease. Therefore, for the purposes of this appeal, we do not decide whether Romines's claim might have been more appropriately designated as one arising from an occupational disease rather than a nonaccidental injury or whether Romines's claim was compensable as an occupational disease.
In its judgment, the trial court applied the legal- and medical-causation tests set forth in Ex parte Trinity Industries, Inc., and its progeny in awarding Romines workers' compensation benefits. However, before that causation analysis may be analyzed, the threshold question that must be answered is whether Romines's claim is one based on a mental disorder or a physical injury; the answer to that question determines whether Romines may maintain his claim under the nonaccidental-injury theory.
The parties direct this court to only one case that arguably allowed a worker to receive workers' compensation benefits for a condition caused, at least in part, by work-related stress. See Safeco Ins. Cos. v. Blackmon, supra. In Blackmon, the worker needed medical treatment for coronary-artery disease after a period of two to three months during which the worker had gone from working approximately 40 hours per week to a more stressful situation in which he worked 70 or 80 hours per week. The medical evidence in that case established that a number of factors, including stress, contributed to the worker's coronary-artery disease. The trial court awarded the worker workers' compensation benefits based on its finding that the worker had suffered a 30% physical impairment. 851 So.2d 539-40.
This court analyzed the employer's appeal in Blackmon by applying the causation analysis applicable to nonaccidental injuries set out in Ex parte Trinity Industries, Inc., supra. This court did so because the worker had sought compensation for an "injury" and because "the parties [had] stipulated that there were two issues for the [trial] court to consider: (1) `whether the accident arose out of and in the course of the employment' and (2) `the extent of [the worker's] disability.'" Safeco Ins. Cos. v. Blackmon, 851 So.2d at 537.[5] This court ultimately determined *876 that the worker had failed to meet the burden for establishing causation that is set forth in Ex parte Trinity Industries, Inc., supra. Blackmon, supra.
In Blackmon, the worker's doctors stated that the work-related stress the worker suffered was one of several factors causing his coronary-artery disease. In the current case, the evidence indicates that Romines's high-blood-pressure symptoms for which he sought workers' compensation benefits were caused solely by work-related mental stress; Romines testified that his doctors recommended only that he reduce or eliminate his exposure to stress and that they did not recommend any other lifestyle change that might assist in lowering his high blood pressure. More significantly, in Blackmon, the parties' stipulation of the issues to be addressed indicates that the court was not presented with and did not decide the issue whether the definition of "injury" under § 25-5-1(9), Ala.Code 1975, encompassed the coronary-artery disease for which the worker sought workers' compensation benefits. In the current case, however, Eldeco has consistently maintained that Romines's claim is precluded by the definition of "injury" set forth in § 25-5-1(9). Therefore, we must conclude that this court's holding in Blackmon is not dispositive of the issue whether the term "injury" in the Act encompasses physical conditions brought about solely or in part by a mental injury or disorder.
Although Romines characterizes his claim as one for a physical injury, i.e., for hypertension, the medical evidence presented at the May 15, 2001, hearing clearly established that Romines's work-related mental or emotional stress caused his disability. Dr. Oakley's testimony established that Romines's symptoms were initiated by a rush of adrenalin, a physical symptom, which caused his blood pressure to increase. However, it is equally clear that the cause of the adrenalin rush was Romines's mental stress or his inability to effectively cope with that stress. Dr. Oakley's diagnosis was that Romines had a "severe anxiety disorder" that created "a physical problem" in the nature of "hypertension and chest pain" and that the stress, not the high blood pressure, caused Romines's disability. Therefore, given that evidence, we must conclude that, although the stress Romines experienced produced physical symptoms, that mental or emotional stress was in the nature of a mental injury, i.e., the "severe anxiety disorder," for which § 25-5-1(9) prevents recovery.
No Alabama case has recognized emotional or mental stress that causes a physiological manifestation to be compensable as a nonaccidental injury under the Act. Although the Act is to be liberally construed, the Alabama Legislature has explicitly excluded a mental injury not caused by a physical injury from the definition of a compensable injury under the Act. We are not, given the arguments presented by the parties on appeal and the facts of this case, inclined to broaden the terms of the Workers' Compensation Act to require employers to provide workers' compensation benefits for a claim seeking compensation, under a nonaccidental-injury theory, for physical symptoms or changes to the body caused by stress or a similar mental injury that was not a result of a physical injury. See 25-5-1(9), Ala.Code 1975.
APPLICATION GRANTED; NO-OPINION AFFIRMANCE OF MAY 23, 2003, WITHDRAWN; OPINION SUBSTITUTED; REVERSED AND REMANDED.
*877 CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs specially.
YATES, P.J., dissents.
MURDOCK, Judge, concurring specially.
I am not persuaded that Romines's injury was "unexpected and unforeseen." See Kane v. South Cent. Bell Telephone Co., 368 So.2d 3, 5 (Ala.1979) ("`The requirement that there must be shown a violent and unusual event which causes the injury [has been] replaced by the principle that there [is] an accident if the result [is] unexpected and unforeseen and it [is] caused by the job.'") (quoting City of Tuscaloosa v. Howard, 55 Ala.App. 701, 705, 318 So.2d 729 732 (1975) (emphasis added)).
Nor am I persuaded that this is a case that satisfies the requirement articulated in Ex parte Trinity Industries, Inc., as to so-called "nonaccidental injury" cases, that the employee must prove that his job duties exposed him to a "danger or risk materially in excess of that to which people are normally exposed in their everyday lives." See Ex parte Trinity Indus., Inc., 680 So.2d 262, 267 (Ala.1996). Even assuming the worker in this case experienced stress materially in excess of that to which people are normally exposed in their everyday lives, the question would still remain whether that stress was foist upon the employee by the duties of his job, or by the employee himself because of the manner in which he elected to perform those duties.
The main opinion states that this court is not inclined to require the employer to provide workers' compensation benefits for physical symptoms or changes to Romines's body caused by stress or similar mental injury that, itself, was not a result of a physical injury, "given the arguments presented by the parties on appeal and the facts of this case." 884 So.2d at 876. I note that among those facts is the fact that the employee does not appear to have suffered "an unexpected or unforeseen" injury and the fact that it was the employee himself, not his job, that appears to have caused the mental stress at issue.
YATES, Presiding Judge, dissenting.
Because I believe that Romines suffered a compensable injury, I must respectfully dissent from the main opinion.
As the main opinion points out, the trial court and Romines treated Romines's claim as one seeking compensation for a nonaccidental injury. For an injury to be compensable, it must be "caused by an accident arising out of and in the course of" the employee's employment. § 25-5-51, Ala.Code 1975. The phrase "arising out of" an employee's employment requires a causal connection between the injury and the employment. Dunlop Tire & Rubber Co. v. Pettus, 623 So.2d 313, 314 (Ala.Civ.App.1993). The phrase "in the course of the employee's employment" refers to the time, place, and circumstances under which the accident occurred. Id. To establish causation in a workers' compensation case where the injury is nonaccidental, i.e., where the injury was not caused by some sudden and unexpected external event, an employee must satisfy a two-part causation test by producing substantial evidence establishing both (a) legal causation and (b) medical causation. Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 (Ala.1996). See also City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975). To prove "legal causation," one need only establish that "the performance of his or her duties as an employee exposed him or her to a `danger or risk materially in excess' of that to which people are normally exposed in their everyday *878 lives." Ex parte Trinity Indus., Inc., 680 So.2d at 267, quoting Howard, 55 Ala.App. at 705, 318 So.2d at 732. To establish medical causation, a claimant "must produce substantial evidence tending to show that the exposure to risk or danger proven in step one of the Howard test `was in fact [a] contributing cause of the injury' for which benefits are sought." Ex parte Trinity Indus., Inc., 680 So.2d at 269, quoting Howard, 55 Ala.App. at 706, 318 So.2d at 732.
I disagree with the main opinion's conclusion that Romines's claim is based on a mental disorder rather than a physical injury and is therefore not compensable. In Safeco Insurance Cos. v. Blackmon, 851 So.2d 532 (Ala.Civ.App.2002), an employee sued his employer seeking to recover workers' compensation benefits related to his coronary artery disease, which he claimed was caused in part by work-related stress. The evidence in Blackmon indicated that the employee's job had become significantly more stressful over a two- to three-month period. The medical evidence presented in that case indicated that the employee's work-related stress was a contributing cause of the employee's coronary artery disease. The trial court determined that the employee suffered a 30% physical impairment and awarded benefits accordingly. This court reversed the judgment of the trial court in Blackmon, concluding that the employee failed to prove legal and medical causation; however, this court analyzed the employee's claim seeking recovery for coronary artery disease brought on in part by his work-related stress as a claim for a nonaccidental injury. In doing so, this court noted that the employee's complaint sought recovery for an "injury" and that the employee's counsel advised the trial court that the parties had stipulated that an issue for the court to consider was "`whether the accident arose out of and in the course of the employment.'" Blackmon, 851 So.2d at 537.
Romines claims that he is not seeking recovery for a mental disorder; rather, he says, he is seeking recovery for symptoms related to his diagnosis of high blood pressure or hypertension, which he claims resulted from his work-related mental stress. Romines alleged in his complaint that he
"suffered an accident [[6]] related injury ... and ... that the performance of his duties of employment exposed [him] to a danger and/or risk materially in excess of that to which people not so employed are ordinarily exposed in their everyday lives and that the exposure to this risk was a contributing cause of [his] injury."
Counsel for Romines stated to the trial court on the record at the beginning of the ore tenus proceeding that the issue for determination is "causation." I do not believe that the allegations of injury in this case are distinguishable from those in Blackmon; therefore, I, as the trial court did, would treat Romines's claim as one seeking recovery for a nonaccidental injury.
After reviewing the record, I conclude that substantial evidence exists to support the court's judgment that work-related stress caused Romines's hypertension to become unmanageable, thus causing him to be permanently and totally disabled. Accordingly, I respectfully dissent from the main opinion.
NOTES
[1] The case action summary sent to this court by the employee of the office of the trial court's clerk contains a list of the trial court's and parties' actions on the case through April 24, 2003.
[2] Those materials appear, at least in part, to be medical records. The certifications of the first appeal and this current appeal by the trial court's clerk do not reference those materials. Nothing in the record on appeal, including the certification of either record on appeal, indicates the origin of those materials or that those materials were admitted into evidence or filed with the trial court. Therefore, we have not considered those materials in our disposition of this appeal.
[3] A "hot" circuit or wire is one in which the electricity is not turned off during the time the workers work on or with that circuit or wire.
[4] "Hypertension" is defined as "[h]igh blood pressure." Stedman's Medical Dictionary 855 (27th ed.2000). The terms "hypertension" and "high blood pressure" are used interchangeably throughout this opinion.
[5] In his brief on appeal, Romines contends that in Blackmon, "just as in the present matter," the parties stipulated that the only issue before the court was whether Romines's claimed injury arose out of and in the course of his employment. The record does not support that assertion. At the May 15, 2001, hearing, the parties agreed that the only issue to be addressed at that hearing was the issue of compensability or causation. Eldeco specifically "dispute[d] that this case [involves] a compensable injury."
[6] Although Romines's complaint uses the word "accident," it is clear to me that when this allegation is viewed in context with the remainder of the complaint, he intends to allege a "nonaccidental" injury.