This is a workmen's compensation case.
Donald Brownfield sued for workmen's compensation benefits he claimed were due to him because of an injury he suffered while employed by Revco D.S., Inc. (Revco).
Revco contended in its answer that Brownfield's injury was an intentional self-injury, that Brownfield was engaging in willful misconduct or horseplay at the time of the injury, and that Brownfield also was willfully breaking employment rules and regulations. Thereafter, both parties filed motions for summary judgment.
After considering oral arguments, depositions, briefs, and case law, the trial court entered an order granting Revco's motion for summary judgment "because [Brownfield] . . . failed to create a genuine issue of material fact and [Revco] is entitled to judgment as a matter of law." Brownfield's subsequent motion to alter, amend or vacate was denied by the trial court; hence, this appeal.
On appeal, Brownfield argues that the trial court erred by granting Revco's motion for summary judgment and by denying Brownfield's post-judgment motion. He contends the following: (1) there was substantial evidence showing that Brownfield's injury arose out of and occurred in the course of his employment, and (2) there was substantial evidence that Brownfield's injury was not caused by a violation of a known reasonable safety rule. We determine, however, that the dispositive issue is whether Brownfield's injury arose out of his employment. We note that Brownfield does not question whether Revco met its initial burden for summary judgment as set forth in Rule 56, A.R.Civ.P. Consequently, we will not consider this.
Rule 56(c), A.R.Civ.P., states that summary judgment is appropriate if "there is no genuine issue of material fact and . . . the moving party is entitled to a judgment as a matter of law." Also, Ala. Code 1975, § 12-21-12(a), requires that "[p]roof by substantial evidence shall be required for purposes of testing the sufficiency of the evidence to support an issue of fact in rulings by the court, including . . . motions for summary judgment." In all civil actions in Alabama, the scintilla rule is explicitly abolished by Ala. Code 1975, §12-21-12(b).
In Bass v. SouthTrust Bank of Baldwin County,538 So.2d 794 (Ala. 1989), our Supreme Court stated the following:
 "The Act [Ala. Code 1975, § 12-21-12(b)] abolishing the scintilla rule does nothing to change the procedure for handling the burden of proof, so if the moving party makes a prima facie showing that no genuine issue of material fact exists, then the burden still shifts to the non-movant; however, the burden is now greater than in the past, because the non-movant must show 'substantial evidence' in support of his position."
Bass, supra, at 798.
"Substantial evidence" has been defined as "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. Founders Life AssuranceCo. of Florida, 547 So.2d 870, 871 (Ala. 1989).
Since this case involves a summary judgment, no presumption of correctness attaches to the trial court's decision and our review is de novo. Gossett v. Twin County Cable T.V.,Inc., 594 So.2d 635 (Ala. 1992). Furthermore, in determining whether substantial evidence exists, we must review the record in the light most favorable to the non-movant and resolve all reasonable doubts against the moving party.Specialty Container Manufacturing, *Page 1205 Inc. v. Rusken Packaging, Inc., 572 So.2d 403 (Ala. 1990).
The record reveals that Brownfield graduated from high school in 1982 and began working for Revco in 1983. Brownfield was working as a utility person, or "floater," performing odd jobs. He was injured while operating a motorized lift, or "cherry picker," which was designed to retrieve boxes from bins located differing heights above the ground. The boxes then would be placed on a wooden platform which was attached to the cherry picker. In deposition, Brownfield testified that he was qualified to operate the cherry picker and had been doing so for the past six and one-half years. He further testified that the cherry picker was equipped with a safety belt which the operator would wear around his waist and which was connected to the cherry picker by means of a safety line called a "tether." The record reveals that the tether has a loop near the tether's attachment to the cherry picker. Also, there is a four-to six-inch drop from the edge of the cherry picker to the wooden platform.
Craig Grantham, a co-worker, testified that, on the day of Brownfield's injury, he was working near the area where Brownfield's injury occurred. According to Grantham, Brownfield notified him that Brownfield's cherry picker had malfunctioned while above the ground, and he asked Grantham to contact the maintenance department. Grantham asked another co-worker, Ed Daniels, to contact the maintenance department. Grantham testified that he resumed his job while the maintenance worker was en route, and occasionally noticed that Brownfield was standing on the cherry picker, but also noticed that Brownfield was unharmed. Grantham testified that, later, he again saw Brownfield, but this time, Grantham's view was obstructed by boxes. He noticed, however, that Brownfield's head was "kind of down." Approximately five minutes later, Grantham saw Brownfield in that same position.
Grantham testified that Bob Kimbrough arrived to repair the cherry picker, but Grantham noticed that Brownfield was still in the same position. Grantham stated that he realized something was wrong and, upon moving closer, he saw Brownfield hanging by his neck from the loop in the tether. According to Grantham, Brownfield's face was discolored, and Grantham and Kimbrough quickly climbed to the cherry picker and freed Brownfield from the loop.
Grantham testified that other workers soon arrived and that the cherry picker was lowered manually. Kimbrough and Daniels administered cardiopulmonary resuscitation, and Brownfield's life ultimately was saved.
To recover workmen's compensation benefits, an employee must show that his injury was caused by an accident arising out of and in the course of his employment, and that the actual or lawfully imputed negligence of the employer was the proximate cause of such accident. Ala. Code 1975, § 25-5-31.
The phrase "arising out of" is distinct from the phrase "in the course of." Pope v. Golden Rod Broilers, Inc.,539 So.2d 313 (Ala.Civ.App. 1989). The factors which determine whether an injury occurred "in the course of" employment are the time, place, and circumstances of the injury. Pope,supra. An injury is not "arising out of" employment, however, unless the employment caused the injury in some way.Pope, supra. "The rational mind must be able to trace the injury to a proximate cause set in motion by the employment and not otherwise." Pope, supra, at 315.
Several of Brownfield's co-workers and supervisors testified that, following Brownfield's injury, they attempted to recreate the situation in which Brownfield was discovered. Each of them testified that they were unable to place their head in the loop without using their hands.
Furthermore, Kimbrough testified that he had seen Brownfield resting his head in the loop on occasions prior to Brownfield's injury. Kimbrough testified that these prior occasions occurred when Brownfield's cherry picker malfunctioned and Brownfield was stranded above the ground waiting on maintenance. Moreover, Brownfield admitted to placing his head through the *Page 1206 
loop on prior occasions while "[j]ust resting [my] head."
Brownfield testified that he has no memory of his injury or its surrounding circumstances, and he does not even remember operating the cherry picker prior to the incident. He further testified that he suffered seizures at Revco on separate occasions in 1989 and that he takes medication to control his seizures. Brownfield stated that he was routinely examined by his doctor on the morning of his injury and was instructed not to take his prescribed medication that day. Brownfield also testified that he knew of no reason, from a work standpoint, why he should ever place his head in the loop of the tether.
In his brief, Brownfield cites Young v. Mutual SavingsLife Insurance Co., 541 So.2d 24 (Ala.Civ.App. 1989), for the proposition that an injury arises out of employment if it arises from a risk or danger which is incidental to the character of employment. Furthermore, Brownfield quotesPope, supra, which holds that "[a]n act is incidental to employment when it is necessary to the life, comfort, or convenience of the employee." Pope, supra, at 315.
Although Brownfield testified that he did not recall the circumstances surrounding his injury, he argues that simply resting his head in the tether's loop, if that is what he did, would be incidental to his employment. In support of this contention, Brownfield cites Natco Corp. v. Mallory,262 Ala. 595, 80 So.2d 274 (1955), which affirmed the trial court's award of workmen's compensation benefits to an employee who was injured while attempting to retrieve a pack of cigarettes from a pit beneath his work area. Accordingly, Brownfield here analogizes his possible situation to that of the employee in Natco, supra.
Brownfield also argues that, even if he was engaged in "horseplay" at the time of his injury, such an act still would be incidental to his employment since he had been encouraged by a supervisor to do so during non-working and non-productive periods. Furthermore, since the exact circumstances of Brownfield's injury are unexplained, Brownfield contends that the rationale in Gold Kist, Inc. v. Pope,539 So.2d 291 (Ala.Civ.App. 1988), supports his claim for benefits.
In Gold Kist, supra, an employee was taking inventory on some pallets approximately eight feet above the ground when he heard a request for customer assistance. As the employee was climbing down, he fell to the concrete floor. Thereafter, the employee was taken to the hospital and he was diagnosed with a seizure disorder. The physician testified that he was not able to determine the cause of the seizures, but that it was possible for some type of trauma to cause them.
In contesting an award of benefits to the employee, the employer argued that the employee failed to establish causation between the employee's infirmity and the accident. In affirming the trial court's award of benefits, this court recognized that an employee must meet two tests of causation — legal and medical — to recover workmen's compensation benefits.Gold Kist, supra. Legal causation was described as the showing by an employee that the performance of his duties exposed him to a danger or risk that he would not have been exposed to had he not been performing his job. Gold Kist,supra. This court held that taking inventory eight feet above the ground established legal causation. Gold Kist,supra.
We also address Ex parte Patterson, 561 So.2d 236
(Ala. 1990), in which an employee was knocked unconscious while standing beneath a steel grid platform performing his job. The employee in that case testified that he did not know what happened to him; he said he remembered being on the job and later awaking in the hospital. In reversing the earlier denial of benefits, our Supreme Court held that the evidence required a finding that the employee's injuries resulted from an accident which was causally connected to his employment, despite the fact that the surrounding circumstances were mostly unexplained. Ex parte Patterson, supra.
Brownfield asserts that the foregoing rationales support his contention that *Page 1207 
his injury arose out of his employment. We disagree and analogize this particular situation to that presented inPope, supra. In distinguishing Brownfield's situation, we note that both Young, supra, and Pope,supra, affirmed the denial of workmen's compensation benefits.
In Pope, supra, an employee was injured when he jumped up and threw a towel into an overhead fan which was more than seven feet above the ground. In affirming the denial of benefits, this court stated:
 "His action was in no way a part of his duties. Indeed, it is difficult to imagine what possible benefit [the employer] might have derived from this action. . . . However, [the employee's] action was in no way necessary to his life, comfort, or convenience and was thus not incidental to his employment." (Citations omitted.)
Pope, supra, at 315.
Furthermore, we note that Natco, supra, was cited in the preceding passage from Pope, supra, and thatNatco's language was used in determining that the employee was not entitled to workmen's compensation benefits.
Also, the evidence here distinguishes this case from GoldKist, supra. As noted earlier, testimony revealed that Brownfield had been seen on prior occasions resting his head in the loop. Furthermore, Brownfield testified that he had placed his head in that position on prior occasions, although he knew of no work-related purpose for doing so. The evidence further revealed that Brownfield must have deliberately placed his head in the loop. Also, Brownfield testified that he had suffered seizures at work on prior, separate occasions, and that he had not taken his prescribed medication on the morning of his injury. This is important in light of the following language inEx parte Patterson, supra: "[The employer] also maintains that [the employee's] injuries are not compensable because they could have been the result of an accident that was caused by idiopathic factors." Ex parte Patterson,supra at 238. "We use the word 'idiopathic' as it is used by Professor Larson, to mean 'peculiar to the individual' and not 'arising from an unknown cause.' Idiopathic refers to an employee's preexisting physical weakness or disease. 1 Larson,Workmen's Compensation Law, § 12.00." Ex partePatterson, supra at 238. "[The] evidence was sufficient to show, at least prima facie, that there was no basis upon which to reasonably infer that idiopathic factors played a role in the accident." Ex parte Patterson, supra, at 239.
Based on the foregoing, we hold that Brownfield failed to produce substantial evidence that his injury arose out of his employment. Accordingly, summary judgment for Revco is proper and the trial court's decision is due to be, and it is hereby, affirmed.
AFFIRMED.
RUSSELL, J., concurs.
ROBERTSON, P.J., dissents.