YATES, Presiding Judge.
Rachel Mosley appeals from the trial court’s order denying her claim for death benefits on behalf of her deceased husband, Tommy Mosley (“Mosley”), under the Workers’ Compensation Act.
On February 22, 1996, Rachel Mosley sued Monarch Tile, Inc. (“Monarch”), seeking worker’s compensation benefits on behalf of Mosley. On September 24, 1997, the trial court conducted ore tenus proceedings, and on October 1, 1997, entered a judgment in favor of Monarch. The judgment states, in relevant part:
“The evidence showed that Tommy Mosley was classified as a boxcar un-loader at Monarch. Testimony of several co-workers and a supervisor showed that the job consisted of seeing that railroad boxcars were properly placed in position in order that the contents— dryable product — could be discharged through chutes placed beneath the boxcar into storage bins. The ‘mechanics’ of this job were testified to, at length, by other boxcar unloaders and a supervisor. The ‘mechanics’ consisted of climbing to the top of the boxcar, up a vertical ladder, in order to open top loading doors or covers to gain access to the interior of the car. It could include using an air hose to force the product to begin flowing out of the bottom of the car through chutes. It further included proper placement of the boxcars over the storage bin areas, placement of the chutes, and attachment of a vibrator, ranging in weight from 80 pounds to 150 pounds, to the side of the boxcar in order to cause the dry product to loosen and flow into the chutes.
[[Image here]]
“The testimony established that Tommy Mosley worked ten to twelve hour days in the months preceding his heart attack. Co-workers, and a supervisor for the Defendant, Monarch, testified that at most two freight cars would be positioned for ‘unloading’ in a ten-twelve hour shift. The testimony was further that there would be approximately 30 to 40 minutes of ‘exertional’ activity during the ten-twelve hour shift, and that the remainder of the time by Mr. Mosley would be spent sitting or standing around watching the clay product flow from the railroad cars into the storage bins.
“There was no testimony as to what activity Tommy Mosley was performing immediately preceding his heart attack.
“The evidence was undisputed that Mr. Mosley died on February 8, 1996, as a result of an acute myocardial ischemia, with previous (remote) myocardial infarction, secondary to severe coronary artery disease. The evidence was undisputed that Mr. Mosley first sought medical attention for chest pain in 1990. He was subsequently hospitalized in October of 1994, and an arteriogram revealed 40-50% blockage in one area, with 30% blockage in another artery. Expert testimony by Dr. Williams, a cardiologist, revealed that the deceased had most of *413 the primary factors for heart disease, including smoking, high cholesterol, and a strong family history of heart disease. Testimony of Dr. Williams further indicated that Mr. Mosley had been advised to stop smoking, and to continue certain prescribed medication. Testimony revealed that Mr. Mosley did not stop smoking, and [that he] quit taking the prescribed medication. Upon autopsy, the undisputed evidence was that Mr. Mosley died as a result of severe coronary arteriosclerosis. At the time of the autopsy, the left main and right coronary arteries were 90%-95% occluded.
[[Image here]]
“This Court finds that the claimant has established legal causation in the case at bar.
[[Image here]]
“It was undisputed that the cause of death was acute myocardial ischemia, with sudden death having occurred as a result of cardiopulmonary arrest. The overwhelming medical evidence presented in this trial showed that [Mr. Mosley] had progressive coronary disease to the extent that major coronary vessels had progressed from 40% occlusion in 1994, to 90%-95% occlusion upon autopsy three years later.
“There was no testimony, by any coworker or supervisor, as to what Mr. Mosley was doing immediately preceding his heart attack. There were witnesses who did testify that he had complained of chest pains, or made motions of patting his chest and taking deep breaths, as if he was ‘short of breath’ on numerous occasions over the past five years.
“Therefore, the Court finds that there was no evidence to show that Mr. Mosley was involved in, or exposed to, any sort of activity immediately prior to or at the time of the attack, or on the onset of the attack, which would satisfy the legal test of medical causation. The Court finds that Mr. Mosley’s heart attack was caused by his progressive coronary artery disease, and not by his employment. The Court further finds that there was no testimony to find any exertion, or strain, or exposure, to said conditions of this employment, that would have been a cause or contributing cause to his heart attack or resulting death.
“In light of the evidence, and for the reasons set forth herein, the Court finds in favor of the Defendant.”
On November 10, 1997, Rachel Mosley filed her appeal to this court. On February 5, 1998, this appeal was stayed, because of Monarch’s then pending bankruptcy proceedings. The action remained stayed until October 23, 2002, when the stay was lifted and briefs were requested.
On appeal, Rachel Mosley argues that in applying the medical-causation test, the trial court made incorrect and insufficient findings of fact and, as a result, erroneously denied workers’ compensation benefits.
This case is governed by the ore tenus rule. When a trial court hears ore tenus evidence, its judgment is presumed correct and will not be disturbed on appeal unless it is so unsupported by the evidence as to be plainly and palpably wrong. Bishop v. Pierce, 726 So.2d 663 (Ala.Civ.App.1998).
In order to establish causation in a workers’ compensation case where the injury is nonaccidental, just as here, the claimant must satisfy a two-part causation test by producing substantial evidence establishing both: (1) legal causation and (2) medical causation. Ex parte Trinity Indus., Inc., 680 So.2d 262 (Ala.1996). In order to prove legal causation, the claim *414 ant needs to establish that the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed to in their everyday lives. To establish medical causation, the claimant must produce substantial evidence showing that the particular exposure to risk or danger established in step one was in fact a contributing cause of the injury for which the benefits are sought. Id.
The evidence presented in this case shows that Mosley possessed most of the primary risk factors for heart disease, including the fact that he smoked, suffered from high cholesterol, had a strong family history of heart disease, had occasional episodes of chest pains, and refused to take preventive steps as advocated by his doctors. The evidence also indicates that Mosley died of a heart attack while at his place of work. In addition, the record shows that Mosley’s occupation exposed him to a higher amount of exertion or strain than that to which the average person might be exposed. However, the record also shows that the majority of his time at work was spent sitting or watching the storage cars release their cargo. Further, the record contains no evidence showing that the exertion sometimes present in Mosley’s work was, in fact, a contributing cause of his death. Thus, the medical-causation test was not satisfied, and we conclude that the evidence contained in the record supports the trial court’s judgment. Ex parte Staggs, 825 So.2d 820 (Ala.2001). Therefore, the trial court correctly entered a judgment for Monarch.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
CRAWLEY, J., concurs specially.
MURDOCK, J., concurs in the result.