917 So.2d 842 (2005)
Alejandro MUHAMMAD, individually, and on behalf of Ashley Kyles, a dependent minor
v.
LAIDLAW TRANSIT, INC.
No. 2030386.
Court of Civil Appeals of Alabama.
June 24, 2005.
*843 Joe A. King, Jr., of Morris, Conchin, Cooper & King, Huntsville, for appellant.
Charles H. Clark, Jr., and David M. Fleming of Huie, Fernambucq & Stewart, LLP, Birmingham, for appellee.
PER CURIAM.
On June 25, 2003, Alejandro Muhammad filed an action as the surviving spouse of, and on behalf of the minor child of, Dylana Muhammad ("the employee"), seeking benefits under the Alabama Workers' Compensation Act ("the Act"), § 25-5-1 et seq., Ala.Code 1975. Laidlaw Transit, Inc. ("the employer"), timely filed its answer on August 1, 2003. The case was tried on December 15, 2003. On December 29, 2003, the trial court entered a judgment in favor of the employer. Thereafter, the employee's surviving spouse, on behalf of himself and the employee's child, filed a notice of appeal on January 16, 2004. We affirm.
The record reveals that the employee drove a bus for the employer. As part of her normal daily route, the employee transported severely handicapped children to and from school.[1] A Huntsville municipal aide, Priscilla Hamel, rode along with the employee in the bus to assist her with and to take care of the handicapped children. In addition to her normal route, the employee sometimes drove students to school competitions and other events. The employee drove several students to an out-of-town band competition on September 27, 2001. The employee did not return home until after midnight. After approximately four or five hours of sleep, the employee returned to duty at approximately 6:00 a.m. On the afternoon of September 28, 2001, while driving a bus for the employer (but after having completed her drop-offs of students), the employee had a seizure that resulted in the employee's death.
The employee had a prior history of epilepsy, including no fewer than three seizures. At the time of her death, she was being treated with medication prescribed by Dr. Tejanand Mulpur, a licensed neurologist. In his deposition, the transcript of which was admitted into evidence at trial, Dr. Mulpur indicated that the employee had not had a seizure for "quite some time" before the seizure she suffered at work on September 28, 2001. He testified that the employee's last seizure had been "a few months ago." Mulpur testified that the September 28, 2001, seizure led to "cardiopulmonary arrest and then that led to brain damage, from which [the employee] never recovered, and that's how she died."
*844 Dr. Mulpur characterized the seizure that led to the employee's death as a "break-through seizure." He testified that whenever a patient has a break-through seizure, the medical community tries to look for the cause of that seizure; he added that there were a number of potential causes for the September 28, 2001, seizure. Among the possible causes identified by Dr. Mulpur were lack of sleep, fatigue, and stress. Dr. Mulpur also testified that seizures can result from a patient's failure to take his or her medication or from not eating. Additionally, Dr. Mulpur testified that break-through seizures, like the one experienced by the employee, can simply occur for no reason.
Dr. Mulpur testified that he had no personal knowledge of whether or not the employee had taken her medication on September 28, 2001. However, he did testify that the employee's lack of break-through seizures over several months warranted an inference that she had been taking her medication and that it was working.
Dr. Mulpur opined, based upon "assumed facts," that "added stress and sleep deprivation" caused the employee's seizure on September 28, 2001, and that the employee died on October 7, 2001, as a result of that seizure. The "facts" that Dr. Mulpur was asked to assume in his testimony were that "prior to the seizure that led to [the employee's] death, [her] employment exposed her to a stressful condition, more so than her average work day" (emphasis added). However, Dr. Mulpur indicated that the employee's having driven the bus on the day of her seizure would amount to nothing more than "routine activity" that the employee would have been "used to," and on cross-examination by counsel for the employer Dr. Mulpur admitted that he had "no idea" what, in the medical sense, had brought on the employee's seizure on September 28, 2001.
At the trial, the employee's coworker (Hamel) and the employee's surviving spouse and child testified. The coworker testified that she had observed the employee on a daily basis for four months preceding the day of the seizure and had noticed that the employee had looked tired on September 28, 2001, and that she "seemed to be stressed that day" because, among other things, she was not making conversation and was "spaced out." The coworker had previously executed an affidavit in which she had asserted that the employee had been awake much of the preceding night driving a high-school band out of town and that on September 28, 2001, the employee had "indicated several times that she did not get any sleep while on her business trip and was very tired." However, when the coworker was asked at trial whether the employee had been exposed on the day of her seizure to "a more stressful situation than everyday normal life," the coworker responded in the negative, adding that the employee had been "used to her route because she did it every day." Further, although the coworker alluded on direct examination to the occurrence of "fussing" between the employee and one of the handicapped children's parents on the morning of the seizure, the coworker testified on cross-examination that the employee actually had not experienced "confrontations" with children or parents on the day of the seizure (unlike other days during the four months preceding the day of the seizure during which the coworker had observed the employee).
The employee's daughter testified that on September 27, 2001, the employee had been at work from 6:00 a.m. until midnight, and that the employee had gone to bed around 1:00 a.m. on the morning of September 28, 2001, upon returning from *845 work that day. She testified that the employee had usually gone to bed around 9:00 or 10:00 p.m. The employee's daughter testified that the employee had slept only four or five hours before awakening on the morning of September 28, 2001. The employee's daughter did not know if the employee had taken her seizure medication before the seizure.
The employee's surviving spouse testified that the employee had been prescribed seizure medication that she had taken regularly. He testified that at lunchtime on September 28, 2001, the day of the fatal seizure, he had talked to the employee on her cellular telephone, and he recounted that she had sounded tired and stressed. He also testified that the last seizure the employee had suffered before the fatal seizure had occurred on August 8, 2001.
In ruling for the employer, the trial court analyzed the employee's injury as a nonaccidental injury. The trial court concluded, in pertinent part:
"The Court finds that the plaintiff has failed to satisfy medical causation and legal causation as required in the instant workers' compensation action. The Court notes that although the [employee] may have suffered from some `work related fatigue and/or stress,' the plaintiff has failed to establish that any such work related fatigue or stress was the proximate cause of the seizure that led to the [employee]'s death as opposed to other causes. ... The Court specifically finds that the plaintiff has failed to establish that the [employee's] death was brought by a non-accidental injury. The Court finds that the death of the plaintiff's decedent is not compensable under the Alabama Workers' Compensation Act."
(Emphasis added.)
Ala.Code 1975, § 25-5-31, provides that benefits under the Act are awardable when it is shown that the employer's actual or lawfully imputed negligence is "the natural and proximate cause" of an employee's injury or death (emphasis added).[2] In order for the employee's surviving spouse to recover compensation under the Act, on his behalf and on behalf of the employee's child, for the death of the employee, he "`must establish both legal and medical causation.'" Ex parte Southern Energy Homes, Inc., 873 So.2d 1116, 1121 (Ala.2003) (emphasis added; quoting Ex parte Moncrief, 627 So.2d 385, 388 (Ala.1993)); see also Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 202 (Ala.Civ.App.1981) ("the burden is on the claimant to establish a definite causal connection between the work and the injury"), cert. quashed, 417 So.2d 203 (Ala.1982). Legal causation, in the context of a nonaccidental injury, requires a showing that in the employee's performance of work duties, the employee "was exposed to `danger or risk materially in excess' of that danger to which all persons are ordinarily exposed in their everyday lives." Ex parte Trinity Indus., Inc., 680 So.2d 262, 269 *846 (Ala.1996). In contrast, medical causation is established by adducing evidence "tending to show that the exposure to [that] risk or danger ... `was in fact [a] contributing cause of the injury' for which benefits are sought." Id.
The trial court did not specifically recite the foregoing standards; however, in concluding that the employee's surviving spouse had not shown that the employee's fatigue or stress (as opposed to other possible causes) was the proximate cause of her fatal seizure, that court expressly determined that the employee's surviving spouse had failed to prove legal and medical causation, both of which were required in order for benefits to be awarded under the Act. Therefore, by necessary implication, the trial court determined (1) that the employee was not exposed to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives and (2) that even if the employee had been exposed to such a risk, that exposure was not, in fact, a contributing cause of the employee's injury for which benefits are sought. In order to affirm the trial court's judgment, we must conclude that one of those determinations was supported by substantial evidence; in contrast, in order to reverse, we must conclude that both of those determinations were unsupported by the evidence.
The employee's surviving spouse argues that the employee was exposed to excessive risks of stress and fatigue and that those risks were contributing causes of her death. Certainly, there was testimony indicating that the employee had looked tired and "seemed to be stressed that day"; also, in its order, the trial court acknowledges that the employee "may have suffered from some `work related fatigue and/or stress.'" Thus, had the trial court determined the issues of legal and medical causation in favor of the employee's surviving spouse and awarded benefits accordingly, that judgment may well have been due to be affirmed.
However, in Ex parte Southern Energy Homes, the Supreme Court approached the task of reviewing a trial court's medical-causation determination by looking to the "`overall substance'" of the evidence and viewing it "`in the full context of all the lay and expert evidence.'" 873 So.2d at 1172 (quoting Ex parte Price, 555 So.2d 1060, 1063 (Ala.1989)) (emphasis omitted). It must be remembered that our task, as an appellate court reviewing a judgment entered in a workers' compensation case, is to determine "only whether the evidence supporting the trial court's findings of fact constitutes `substantial evidence,' i.e., `"evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."'" Ex parte Staggs, 825 So.2d 820, 821-22 (Ala.2001) (quoting Ex parte Trinity Indus., Inc., 680 So.2d at 268, quoting in turn West v. Founders Life Assur. Co. of Florida, 547 So.2d 870, 871 (Ala.1989)). In contrast, an appellate court "is prohibited from reweighing the evidence, i.e., it is not to consider whether in its opinion the `substantial evidence' before the trial court might have caused the appellate courtif it had been the factfinder  to find the facts to be different from what the trial court found them to be." Ex parte Staggs, 825 So.2d at 822.
As we have stated, the trial court concluded that "although the plaintiff may have suffered from some `work related fatigue and/or stress,' the plaintiff has failed to establish that any such work related fatigue or stress was the proximate cause of the seizure that led to the decedent's death as opposed to other causes." The trial court's use of the phrase "the proximate cause" in its judgment, a term that *847 the Act itself uses, does not indicate that that court applied a causation test other than that specified in Ex parte Trinity Industries. Indeed, the trial court's very use of the term "non-accidental injury" to refer to the employee's seizure evinces comprehension of the distinction drawn between such injuries and "accidental" injuries that was outlined at length in Ex parte Trinity Industries (680 So.2d at 266-68).
After a review of the record, we conclude the trial court properly could have rejected the proposition that work-related stress and fatigue were contributing causes of the employee's seizure and, instead, could have concluded that the seizure that the employee suffered (one of at least four that she suffered during her lifetime) was idiopathic, i.e., peculiar to her. Brownfield v. Revco D.S., Inc., 612 So.2d 1203, 1207 (Ala.Civ.App.1992). As we have noted, while there was evidence to the contrary, there was substantial evidence before the trial court indicating that the employee's work environment on the day of her seizure was no more stressful than that present on other workdays and that the employee had become inured to those work conditions. Moreover, Dr. Mulpur acknowledged that a break-through seizure, such as that suffered by the employee, can occur for no reason as well as in response to stress or fatigue.
In light of our standard of review, and in light of the Supreme Court's admonition that medical causation "must be determined on a case-by-case basis" in the context of all of the evidence, Ex parte Price, 555 So.2d at 1062, we cannot conclude that the trial court erred in determining that the employee's surviving spouse failed to demonstrate a medical causative link between the employee's employment and her seizure of September 28, 2001.[3] That court's judgment is, therefore, due to be affirmed.
AFFIRMED.
THOMPSON and PITTMAN, JJ., concur.
MURDOCK and BRYAN, JJ., concur in the result, with writings.
CRAWLEY, P.J., dissents, with writing.
MURDOCK, Judge, concurring in the result.
I concur in the result and write separately to express my views on issues that are presented by both the main opinion and Presiding Judge Crawley's dissenting opinion.

I.
Like Judge Crawley, I believe the employee's seizure is appropriately viewed as a "physical injury" as that term is used in the definitions of "accident," "injuries by an accident arising out of and in the course of the employment," and "injury" in Ala. Code 1975, § 25-5-1(7)-(9), and not a "mental disorder or mental injury" of the nature contemplated by the last sentence of § 25-5-1(9). In contrast to the views expressed in both Judge Crawley's dissenting opinion and in the main opinion, however, I do not believe it necessary for this court to reach the issue of medical causation in this case. Instead, I believe the result stated in the main opinion should be reached because the record before *848 us does not demonstrate the existence of legal causation.
Judge Crawley comments in his dissenting opinion that it is "undisputed that the employee had been required by the employer to drive approximately 25 or 26 out of the 30 hours immediately preceding the employee's seizure." 917 So.2d at 854 (Crawley, P.J., dissenting) (emphasis added). I find no evidence in the record, however, of the employee being required to drive 25 or 26 of the last 30 hours before suffering the seizure in question. Instead, what we do and do not know from the record is merely the following:
On September 27, 2001, beginning at approximately 6:15 a.m. if she followed her normal schedule, the employee drove her normal busload of 12 handicapped students to school. We are not told by the record how long it took the employee to complete this task. There is no evidence in the record that the employee drove for more than two hours in picking up and delivering the students to school.
Further, we do not know from the record whether, after completing the task of delivering students to school on the morning of September 27, the employee had any work-related duties before 2:30 that afternoon. The plaintiff, who had the burden of proof, introduced no evidence that the employee had any work-related duties, much less any driving duties, during this time. For all that appears in the record made by the plaintiff, the employee could have rested, or even slept, during a six-hour break between her morning and afternoon duties.
The record next indicates that at approximately 2:30 p.m. on the afternoon of September 27, the employee began the task of driving the students home from school. The best that I can determine from the record is that this task took approximately two hours.
The employee was accompanied on her bus in taking the students to and from school by a "monitor" employed by the Huntsville City School System. The students were picked up in the morning from, and delivered in the afternoon to, various locations throughout Huntsville.
At some time (again, we are not told exactly when), after dropping off the last of the students on the afternoon of the 27th, the employee drove a different group of students to a band competition. Perhaps most significantly, we are not told the location of the band competition, including whether or not it was located in or near Huntsville, or some substantial distance away. Accordingly, the record does not reflect the duration of the employee's driving time in delivering the students to the band competition on the evening of the 27th. It may have taken 15 or 20 minutes, or it may have taken an hour or 2, we simply do not know. By the same token, of course, we do not know how long it took for the employee to make the return drive from the band competition later that night.
Furthermore, there is no suggestion in the record that the employee was for any reason required to continue driving her bus during the time the band students participated in the competition during the evening of September 27. Common sense would suggest otherwise. For all we know from the record before us, therefore, the employee may have had several hours to eat, rest, or even sleep, between the point in time when the students disembarked from her bus and the time they returned to the bus for the return trip. The party with the burden of proof, the plaintiff, introduced no evidence to the contrary.
The next thing we are told by the record is that after returning home from the band competition trip after midnight on the morning of September 28, the employee *849 slept for four to five hours beginning about 1:00 a.m. She then returned to work at approximately 6:40 the next morning to drive her normal busload of students to school. The record, again, does not reflect that the employee had any driving duties between the completion of that task and the resumption of her driving duties at approximately 2:30 p.m. on the afternoon of September 28. She suffered the seizure sometime in the late afternoon hours of September 28 after completing the task of driving her normal busload of students home from school.
In sum, I see no evidentiary basis for the proposition that the employee drove 25 or 26 of the last 30 hours before the seizure occurred. What the evidence does tell us is that the employee drove at least approximately eight total hours (approximately two hours each in the morning and in the afternoon of both September 27 and 28) transporting her normal busload of students to and from school with the help of an assistant. This approximately 8 hours of driving occurred during the last 35 to 36 hours before her seizure occurred. How many additional minutes or hours she was required to drive to and from the band competition on the 27th is simply not reflected in the record. Nor does the record establish that the employee was unable to eat, rest, or even sleep between the times she fulfilled her various driving duties on September 27 and 28. On the other hand, the record does reflect that the employee was put in a position of working late on the night of the 27th and returning to work at or near the normal time on the following morning.
Based on the foregoing, the trial court reasonably could have concluded that the most that was proven by the plaintiff was that the employee in the present case was put in a position of working late on the night of September 27, and then obtaining as much as five hours sleep, before returning to work the following morning. On such facts, this court cannot conclude as a matter of law that the trial court erred in finding that the employee was not exposed to "a danger or risk materially in excess of that to which people are normally exposed in their everyday lives." Ex parte Trinity Indus., Inc., 680 So.2d 262, 267 (Ala.1996). While the employee's circumstances may not have been routine or the preferred circumstances for her, such circumstances certainly are not uncommon in everyday life, either as a result of demands at work, demands at home, or some combination of the two. Therefore, the evidence in the record is inadequate to prove legal causation.

II.
I also note that the main opinion relies on § 25-5-31, Ala.Code 1975, for the proposition that a showing of "proximate causation" is a necessary element of a claim for workers' compensation benefits. Despite the citation to § 25-5-31 in several opinions of this court and the Supreme Court, including at least one opinion authored by this judge (see Barrett v. Lee Brass Co., 883 So.2d 227 (Ala.Civ.App.2003)), § 25-5-31 does not appear to be applicable to this or any other case in which a claim is made for what are commonly referred to as workers' compensation benefits.
One indication that § 25-5-31 was not intended to be applicable in such cases appears on the face of the statute itself. Although claims for workers' compensation benefits are commonly, and correctly, understood as based upon a no-fault system of liability in which an employee's entitlement to such benefits does not depend on his or her ability to prove the employer negligent or otherwise culpable, § 25-5-31 only provides for the recovery of damages where an injury is caused by "the actual or *850 lawfully imputed negligence of the employer." (Emphasis added.) Further, although workers' compensation benefits are commonly, and correctly, understood as being prescribed, and limited, by the Workers' Compensation Act, § 25-5-31 merely provides that when an employee has suffered a personal injury or death, the employee or his or her personal representative "shall receive compensation by way of damages therefor." The provisions of the Workers' Compensation Act that provide for entitlement to benefits irrespective of the lack of culpability on the part of the employer, and the provisions that set parameters on the benefits available under the Act, are found in Article 3 insofar as injuries by accident are concerned (and Articles 4 and 7 insofar as occupational diseases and exposure to radiation are concerned), including particularly §§ 25-5-50, -51, and -57. See also § 25-5-1, Ala.Code 1975 (definitions).
The reason Article 2 is included in the Workers' Compensation Act at all is to liberalize the common law for those employers who make an "election" (see §§ 25-5-50 and -54) not to be covered by the no-fault system prescribed by Articles 3, 4, and 7. Article 2 accomplishes this by, among other things, eliminating the common-law defenses of contributory negligence, assumption of the risk, and the fellow-servant doctrine. See § 25-5-32. As did Justice Jones at the time he wrote his concurring opinion in Reed v. Brunson, 527 So.2d 102, 121-22 (Ala.1988) (Jones, J., concurring in the result), I have found only one case reporting an election by an employer to be governed by the common law, as liberalized by Article 2 of the Act, rather than by Article 3 or the succeeding Articles of the Act. See Belcher v. Chapman, 242 Ala. 653, 7 So.2d 859 (1942). For a more thorough discussion of the public policy and constitutional concerns that, in tension with one another, led legislatures, including Alabama's, to liberalize the common law of their states and thereby induce employers to accept the quid pro quo of limitations on their financial exposure in return for subjecting themselves to a system of no-fault liability under statutory provisions such as those in Articles 3, 4, and 7, see 1 Terry A. Moore, Alabama Workers' Compensation §§ 2:1 to 3:4 and 4:1 to 4:3 (1998).[4]
Section 25-5-31, Ala.Code 1975, sometimes has been cited, as it is in the main opinion, in an effort to provide succinct and direct textual support for the proposition that "proximate causation" is an element of a claim for workers' compensation benefits. In what is commonly understood to be a workers' compensation case (i.e., a case brought under the no-fault system prescribed in Articles 3, 4, and 7), the necessity of showing proximate causation is a function not of Article 2 and § 25-5-31, however, but of those other  applicable  statutory provisions that require an employee's malady to "arise out of" his or her employment. See § 25-5-1(9), Ala. Code 1975 (defining "injury" as an "injury by accident arising out of and in the course of the employment"); § 25-5-110(1), Ala. Code 1975 (Article 4) (defining "occupational disease" as a disease "arising out of" *851 the employment); § 25-5-190(1) (Article 7) (defining "occupational exposure to radiation" as exposure "arising out of" the employment). It is well established that this "arising out of" element requires proof of "proximate causation."
"`[I]n Alabama the employment must be the source and cause of the accident. Our supreme court in Wooten v. Roden, 260 Ala. [606,] 610, 71 So.2d [802,] 805 [(1954)], stated that in order to satisfy the "source and cause" requirement "the rational mind must be able to trace the resultant injury to a proximate cause set in motion by the employment and not otherwise."'"
Wal-Mart Stores, Inc. v. Morgan, 830 So.2d 741, 745 (Ala.Civ.App.2002) (quoting Slimfold Mfg. Co. v. Martin, 417 So.2d 199, 201-02 (Ala.Civ.App.1981)) (emphasis added). In the year after it decided Wooten v. Roden, 260 Ala. 606, 71 So.2d 802 (1954), the Supreme Court stated:
"[T]he injury must be caused by an accident [(1)] arising out of and [(2)] in the course of employment to be compensable. Hardisty v. Woodward Iron Co., 214 Ala. 256, 107 So. 837 [(1926)]; Jones v. Sloss-Sheffield Steel & Iron Co., 221 Ala. 547, 130 So. 74 [(1930)]. For an accident to `arise out of employment' the employment must have been the cause and source of the accident and the resultant injuries must be traceable to a proximate cause set in motion by the employment, not by some other agency. Foster v. Continental Gin Co., 261 Ala. 366, 74 So.2d 474 [(1954)]."
Alabama Textile Prods. Corp. v. Grantham, 263 Ala. 179, 183, 82 So.2d 204, 207 (1955) (emphasis added) (quoted with approval in Ex parte Trinity Indus., Inc., 680 So.2d at 269 n. 2).[5]

III.
Finally, I note the tension between the main opinion and Presiding Judge Crawley's dissenting opinion over the "proximate cause"/"contributing cause" issue. The fact that the "cause set in motion by the employment" need only be a "contributing cause," as Presiding Judge Crawley correctly argues in his dissent (see City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729, 732 (1975) (explaining that the risk or danger at issue must be a "contributing cause" of the injury; cited with approval in Ex parte Trinity Indus., Inc., 680 So.2d at 269)), is not inconsistent with the fact that it nonetheless must be a proximate cause. See, e.g., Ex parte Trinity Indus., Inc., supra; USX Corp. v. Bradley, 881 So.2d 421, 428 (Ala.Civ.App. 2003) ("[Ex parte] Valdez[, 636 So.2d 401 (Ala.1994),] and [Ex parte] Trinity [Industries] clarified the test for medical causation and explained that `proximate cause' is not equivalent to `sole cause.'"); USX Corp. v. Bradley, 881 So.2d at 432-33 (Murdock, J., concurring in part and concurring in the result) (discussing the fact that although an event may be only one of two or more "contributing causes," it nonetheless may be a "proximate cause" of the employee's injury).[6]
*852 That said, it nonetheless may be noted that Presiding Judge Crawley's dissent suggests a concern that the trial court's finding, regarding medical causation, that the employee's alleged fatigue or stress was not "the proximate cause" of her seizure implies that the trial court failed to consider whether that alleged fatigue or stress was "a contributing cause" of the seizure. I question whether, whenever a trial court uses the article "the" rather than the article "a" and thereby makes a finding to the effect that an event was not "the proximate cause" of an employee's injury, we must necessarily conclude that the court was not aware of, or was not applying, the "contributing cause" standard. A trial court's written findings in this regard must be assessed on a case-by-case basis, in their entirety and in the context of the entirety of the record and the issues postured by the parties. That is an assessment that I see no need to make in the present case in light of the failure of the plaintiff to prove legal causation.
BRYAN, Judge, concurring in the result.
To establish medical causation in this case, the employee's surviving spouse was required to introduce substantial evidence indicating that the danger or risk to which the employee was exposed was a contributing cause of the injury. Ex parte Trinity Industries, Inc., 680 So.2d 262, 269 (Ala. 1996). In this case, the trial court found that the evidence did not support a finding of medical causation. Given the particular facts of this case, Dr. Mulpur's expert medical testimony was crucial to the surviving spouse's contention that medical causation exists. Id. However, Dr. Mulpur gave equivocal testimony concerning the possible causes of the employee's injury. Given the equivocal nature of that testimony, the trial court could have found that the employee's surviving spouse failed to meet his burden of introducing substantial evidence of medical causation. Therefore, I believe that the trial court was correct in its judgment.
CRAWLEY, Presiding Judge, dissenting.
The trial court determined incorrectly that the employee suffered a mental injury rather than physical injury. Additionally, the trial court erred in not applying the appropriate standards for legal causation and medical causation. I must therefore dissent.
The standard of review in a workers' compensation case was stated by our supreme court in Ex parte Trinity Industries, Inc., 680 So.2d 262 (Ala.1996).
"[W]e will not reverse the trial court's finding of fact if that finding is supported by substantial evidence  if that finding is supported by `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.'"
Ex parte Trinity Indus., 680 So.2d at 268-69 (quoting West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989)).
However, "[i]n reviewing the standard of proof set forth herein and other legal issues, review by the Court of Civil Appeals shall be without a presumption of correctness." § 25-5-81(e)(1), Ala.Code 1975.
The trial court analyzed the employee's injury as a nonaccidental injury. The trial court concluded:
"The Court finds that the plaintiff has failed to satisfy medical causation and legal causation as required in the instant workers' compensation action. The Court notes that although the [employee] may have suffered from some `work related fatigue and/or stress,' the plaintiff *853 has failed to establish that any such work related fatigue or stress was the proximate cause of the seizure that led to the decedent's death as opposed to other causes. Moreover, the Court notes that any mental or emotional stress which may produce physical symptoms is in the nature of a mental injury for which § 25-5-1(9) Code of Alabama prevents recovery. Likewise, the plaintiff has failed to establish that the plaintiff's seizure was brought on by an occupational disease; there has been a failure to establish that at the pertinent times at issue, the worker was exposed by her employment to an hazard in excess of those hazards ordinarily incident to employment in general and different in character from those found in the general run of occupations. The Court specifically finds that the plaintiff has failed to establish that the decedent's death was brought by a non-accidental injury. The Court finds that the death of the plaintiff's decedent is not compensable under the Alabama Workers' Compensation Act."
(Emphasis added.)
The employee suffered a physical injury within the meaning of § 25-5-1(9), Ala. Code 1975. Under the Workers' Compensation Act, an injury does not include a mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body. § 25-5-1(9), Ala.Code 1975.
In its order, the trial court cites Eldeco, Inc. v. Romines, 884 So.2d 867 (Ala.Civ. App.2003), for the following proposition:
"No Alabama case has recognized emotional or mental stress that causes a physiological manifestation to be compensable as a nonaccidental injury under the Act. Although the Act is to be liberally construed, the Alabama Legislature has explicitly excluded a mental injury not caused by a physical injury from the definition of a compensable injury under the Act."
Eldeco, 884 So.2d at 876.
In Eldeco, this court reversed an award of workers' compensation benefits and remanded the case. The worker in Eldeco claimed that he suffered from physical, nonaccidental injuriessevere headache, confusion, blurring of vision, slurred speech, and dizziness. The worker alleged that he was exposed to on-the-job stress that was a hazard materially in excess of that to which ordinary people are exposed in their everyday lives and that this stress was a contributing factor that exacerbated his hypertension and contributed to his physical injuries.
In Eldeco, this court correctly and necessarily reversed the award of workers' compensation benefits and remanded the case. As Judge Murdock's special concurrence in Eldeco points out, the worker failed to establish legal causation because he did not show that the stress was "foist upon" him by his job rather than being caused by the worker himself. Id. at 877 (Murdock, J., concurring specially). Although I concurred in the main opinion in Eldeco, I now disavow the portion of that opinion that states:
"No Alabama case has recognized emotional or mental stress that causes a physiological manifestation to be compensable as a nonaccidental injury under the [Workers' Compensation] Act. Although the Act is to be liberally construed, the Alabama Legislature has explicitly excluded a mental injury not caused by a physical injury from the definition of a compensable injury under the Act. We are not, given the arguments presented by the parties on appeal and the facts of this case, inclined to broaden the terms of the Workers' Compensation Act to require employers *854 to provide workers' compensation benefits for a claim seeking compensation, under a nonaccidental-injury theory, for physical symptoms or changes to the body caused by stress or a similar mental injury that was not a result of a physical injury. See 25-5-1(9), Ala.Code 1975."
Eldeco, 884 So.2d at 876. Section 25-51(9) excludes from the definition of injury "a mental disorder or mental injury that has neither been produced nor been proximately caused by some physical injury to the body." However, a physical injury caused by a mental disease or disorder is not excluded. Regardless, in the case at hand, the employee suffered a physical injurycardiopulmonary arrest and eventual death.
To establish legal causation in a nonaccidental-injury case, a worker must show that "the performance of his or her duties as an employee exposed him or her to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives." Ex Parte Trinity Indus., 680 So.2d at 267. The trial court did not specifically state the legal-causation standard that it applied; however, it did determine that the employee failed to prove legal causation.[7] Therefore, the trial court must have determined that the employee was not exposed to a danger or risk materially in excess of that to which people are normally exposed in their everyday lives.
The employee's dependents argue that the dangers or risks to which the employee had been exposed were stress and fatigue. There was testimony indicating that the employee looked tired and "seemed to be stressed that day." More importantly, it was undisputed that the employee had been required by the employer to drive approximately 25 or 26 out of the 30 hours immediately preceding the employee's seizure. In its order, the trial court acknowledges that the employee "may have suffered from some `work related fatigue and/or stress.'"
Based on the trial court's findings and their undisputed factual underpinnings, the trial court's legal conclusion that the employee did not prove legal causation is erroneous. People in their everyday lives are not exposed to conditions in which they have to drive for 26 out of 30 hours. Additionally, people in their everyday lives generally do not have to drive in a sleep-deprived condition with 12 severely handicapped children on a bus. That the employee was used to her normal route, according to Dr. Mulpur and the employee's coworker Priscilla Hamel, is irrelevant.
Regarding medical causation, the trial court concluded that "although the [employee] may have suffered from some `work related fatigue and/or stress,' the plaintiff has failed to establish that any such work related fatigue or stress was the proximate cause of the seizure that led to the decedent's death as opposed to other causes" (emphasis added). This is not the correct test for medical causation. To show medical causation, a worker must show that a risk to which he or she was exposed was a contributing cause of the injury. Ex Parte Trinity Indus., Inc., supra; *855 Mosley v. Monarch Tile, Inc., 861 So.2d 411 (Ala.Civ.App.2003).
In Ex parte Trinity Industries, Inc., the Supreme Court of Alabama refined the two-prong causation standard set out in City of Tuscaloosa v. Howard, 55 Ala.App. 701, 318 So.2d 729 (Ala.Civ.App.1975). The court stated:
"Once a claimant establishes `legal causation,' he or she then must establish `medical causation,' the second prong of the Howard standard, by producing evidence tending to show that the particular exposure to risk proven in regard to prong one `was in fact [a] contributing cause of the [complained-of] injury.' Howard 55 Ala.App. at 706, 318 So.2d at 732."
680 So.2d at 266-67. Chief Justice Hooper's dissent in Ex parte Trinity Industries, Inc., points out that the Howard test requires the danger or risk to which the employee is exposed to be "`the contributing cause of the injury.'" Id. at 273 (Hooper, C.J., dissenting)(some emphasis omitted). However, the majority in Ex parte Trinity Industries, Inc., explained:
"In the context of certain injuries or diseases, the origin of which in general can be scientifically linked to certain strong risk factors or to certain stimuli but the origin of which as to any one person cannot be scientifically determined with certainty, medical evidence of causation in a workers' compensation case, whether in the form of testimony or treatise excerpts, need only show that the work-related risk could have been a precipitating factor in bringing about the onset of the disease."
Id. at 271 (footnote omitted; emphasis added).
In Stebbins Engineering & Manufacturing Co. v. Tullis, 505 So.2d 1230 (Ala.Civ. App.1986), a worker suffered a seizure at work. The seizure caused the worker to fall and break his neck. The worker sought workers' compensation benefits. The worker was awarded compensation and the employer appealed, contending that the worker had failed to establish medical causation. This court stated:
"In order to recover benefits in the instant case under Alabama's workmen's compensation laws, the employee must establish both legal causation and medical causation. Fordham v. Southern Phenix Textiles, Inc., 387 So.2d 204 (Ala.Civ.App.1980). In order to establish medical causation, the employee must demonstrate that the exertion, strain, or exposure to conditions on the job was, in fact, a contributing cause of his injury. Fordham, 387 So.2d 204."
Stebbins Eng'g & Mfg. Co. v. Tullis, 505 So.2d at 1231.
In Stebbins, this court affirmed the judgment of the trial court. The worker in Stebbins testified as to the conditions on the job on the day of his injury  the temperature was around 95 degrees inside the tank in which the worker was required to assemble scaffolding. More importantly, deposition testimony by a Dr. Peden, a neurological surgeon who had treated the worker, was admitted into evidence. The testimony in Stebbins regarding medical causation was similar to the testimony in the case at hand.
"In answer to a hypothetical question, Dr. Peden stated that getting overheated while working inside a tank could have precipitated the seizure which resulted in the employee's injury.
"The employer points out that Dr. Peden also stated in his deposition that there were two possibilities for the cause of the employee's seizurethe heat or a withdrawal seizure from alcohol. The employer contend[ed] that Dr. Peden's testimony was, therefore, mere speculation *856 and conjecture and cannot be relied upon to establish that the injury was covered under workmen's compensation. Ray Motels, Inc. [v. Griffin], 428 So.2d [107,] 108 [(Ala.Civ.App.1983)]."
Stebbins, 505 So.2d at 1231-32. This court stated that "[w]e do not find the medical testimony so speculative and conjectural that the trial court and this court cannot rely upon this testimony to find medical causation." Id. at 1232. The court went on to say:
"We point out that Professor Larson, in 3 A. Larson, The Law of Workmen's Compensation § 79.51(a)(1983), states that in appropriate cases benefits can be awarded even when medical evidence of the relationship of the employment to the injury is inconclusive, indecisive, or inconsistent. He cites the following cases in support of this statement: Public Service Co. v. Industrial Commission, 189 Colo. 153, 538 P.2d 430 (1975); Hartford Accident & Indemnity Co. v. Waters, 87 Ga.App. 117, 73 S.E.2d 70 (1952); Hanna v. Edward Gray Corp., 197 Kan. 793, 421 P.2d 205 (1966); Eagles v. Golden Cove, Inc., 260 S.C. 113, 194 S.E.2d 397 (1973); Texas Employers Insurance Association v. Goodeaux, 478 S.W.2d 865 (Tex.Civ.App.1972)."
Id. Stebbins and each of the cases cited by Larson all affirm an award of benefits. However, they clearly illustrate that to establish medical causation a claimant does not have to show that the hazard or risk to which they were exposed was the sole cause of their injury.
Dr. Mulpur's deposition testimony in this case contained the following exchange:
"In any seizure patient, as I said, increased stress level (sic) can precipitate seizures, especially, especially, if they are sleep deprived. Because both conditions are existing with Ms. Muhammad on that day it is reasonable to say. Because prior to that she was reasonably very well controlled on the medication. She did not have a case of break-through seizures, it was very periodically, I mean, not every day. Her last seizure was a few months ago prior to that day. So, it is reasonable to assume that there should be some precipitating factor for any break-through seizure.
"So, whenever a patient has a break-through seizure we try to look for the cause, what brought the break-through seizure. Is it some antibiotics she was taking or is it new type of medication which she has been taking that she has not been on, we look for other causes. At that time, she was not on any new medications than we've described. So, it is reasonable to assume that stress causes that and sleep deprivation causes that.
"Q. Just so when we look back at this we're able to fully understand what you're saying, are you saying that based on that assumed fact that it's reasonable to infer that her employment contributed to the seizure?

"A. Yes. The added stress and sleep deprivation caused it, yes, sir."

(Emphasis added.) The trial court applied the wrong standard for medical causation. The trial court concluded that "the [plaintiff] has failed to establish that any such work related fatigue or stress was the proximate cause of the seizure that led to the decedent's death as opposed to other causes." However, the correct analysis is whether the risk or hazard to which the employee was exposed was a contributing cause of the seizure. See Ex parte Trinity Indus., Inc., supra.
The employee suffered a physical injury within the meaning of § 25-5-1(9). Additionally, the trial court did not properly analyze whether the plaintiff had demonstrated legal causation or medical causation *857 of the physical injury under the Howard two-prong test refined in Ex parte Trinity Industries, Inc. Therefore, I believe this case should be reversed and remanded.
NOTES
[1] The record is silent with respect to the employee's specific work-related duties, if any, that she may have had between her daily pick-ups and drop-offs of children.
[2] Although § 25-5-31, Ala.Code 1975, is included within Article 2 of the Act, which applies where Article 3 of the Act (governing elective compensation) would not apply, the provision in § 25-5-31 regarding an employee's right to seek compensation from an employer upon a showing of proximate causation of an injury or death stemming from his or her employment has recently been cited and applied in cases arising under Article 3 as well. E.g., Ex parte Byrom, 895 So.2d 942, 947 (Ala.2004); Ex parte Fryfogle, 742 So.2d 1258, 1260 (Ala.1999); and Ex parte Trinity Indus., Inc., 680 So.2d 262, 265-66 (Ala. 1996). See also Barrett v. Lee Brass Co., 883 So.2d 227, 229 (Ala.Civ.App.2003) ("To be compensable under [the] Act ..., an employee's injury or death must result from an accident `arising out of and in the course of his employment.' Ala.Code 1975, § 25-5-31.").
[3] We thus need not reach the correctness of the trial court's determination that the employee had suffered a "mental injury" and that that injury was not compensable under Ala.Code 1975, § 25-5-1(9), under the construction of that statute set forth in Eldeco, Inc. v. Romines, 884 So.2d 867 (Ala.Civ.App.), cert. denied, 884 So.2d 879 (Ala.2003), an issue that we had requested the parties to address at oral argument.
[4] Mr. Moore also discusses in § 3:4 the view that it was never actually necessary to give employers the choice between coverage under Article 3 and coverage under the common law as liberalized in Article 2 in order for the Act to be constitutional, and that instead coverage under the Act could have been made compulsory at the outset under the state's police power. He also discusses in § 3:4 the 1973 amendments to the Act, Ala. Acts 1973, Act No. 73-1062, that, at least technically, transformed the Act from an elective statute into a purely compulsory act, and the 1992 amendments, Ala. Acts 1992, Act No. 92-357, that have at least partially returned to the Act its elective character.
[5] In contrast, the "arising ... in the course of employment" requirement speaks to the necessity for the injury to occur "within the period of [the employee's] employment, at a place where he may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incident to it." Alabama Textile Prods. Corp., 263 Ala. at 183, 82 So.2d at 207 (citing Southern Cotton Oil Co. v. Bruce, 249 Ala. 675, 32 So.2d 666 (1947)).
[6] A cause that is "remote" is insufficient; nor can the cause be merely a "sine qua non," or a "but for" cause, and there can be no independent intervening event that breaks the causal link. See, e.g., USX Corp. v. Bradley, 881 So.2d at 432-33 (Murdock, J., concurring in part and concurring in the result).
[7] In its order, the trial court states that "the worker was exposed by her employment to a hazard in excess of those hazards ordinarily incident to employment in general and different in character from those found in the general run of occupations." However, this is the causation test for an occupational disease. Northeast Alabama Reg'l Med. Ctr. v. Isbell, 802 So.2d 1087 (Ala.Civ.App.2001). At no time did the plaintiff argue that the employee's injury was compensable as an occupational disease. In fact, it was never an issue at all.